UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COOK INCORPORATED, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:09-cv-1248 WTL-TAB |
| | ) | |
| ENDOLOGIX, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | _____ |
| ENDOLOGIX, INC., | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK INCORPORATED, | ) | |
| Counterdefendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO STAY PROCEEDINGS PENDING *EX PARTE* APPLICATION FOR
REEXAMINATION OF PATENTS-IN-SUIT**

Defendant/Counterclaimant ENDOLOGIX, Inc. ("ENDOLOGIX"), hereby moves to stay this action pending the outcome of reexamination proceedings requested by ENDOLOGIX before the United States Patent and Trademark Office ("the PTO") with respect to both U.S. Patent No. 5,755,777 (the "'777 Patent") and U.S. Patent No. 5,035,706 (the "'706 Patent") (together the "Patents-in-Suit").

## I.  BACKGROUND AND SUMMARY

Plaintiff COOK Incorporated ("COOK") served its Complaint in this action on October 8, 2009, asserting infringement of the Patents-in-Suit by ENDOLOGIX.  ENDOLOGIX filed its Answer and Counterclaims on November 13, 2009, asserting affirmative defenses and counterclaims of, among other things, patent noninfringement and invalidity.  The validity of the Patents-in-Suit is a core issue in this case.  ENDOLOGIX maintains that the Patents-in-Suit were pre-dated by other patents showing the same designs which COOK asserts are covered by the Patents-in-Suit.

After investigating the prior art, ENDOLOGIX promptly filed a request for the reexamination of the '777 Patent with the PTO on November 16, 2009 and filed a similar request with the PTO relating to the '706 Patent on November 23, 2009.[1]  (Stowell Decl. Ex. 7 & 8.) The request for reexamination of the '777 Patent asserts that Claims 1 and 11 of the patent are invalid in view of prior patents ("prior art") not previously considered by the PTO.  Claims 1 and 11 of the '777 Patent are the Claims asserted against ENDOLOGIX by COOK in this lawsuit. (Compl. ¶ 10, Dkt # 1.)  Likewise, the request for reexamination of the '706 Patent asserts that Claims 6 and 12 of the patent are invalid in view of prior art not previously considered by the PTO.  Claims 6 and 12 of the '706 Patent are the Claims asserted against ENDOLOGIX by COOK in this lawsuit.  (Compl. ¶ 13, Dkt # 1.)

ENDOLOGIX, through the present Motion, seeks to stay this litigation until the PTO

---

[1]  Reexamination of a patent is a statutory procedure in which the PTO re-evaluates the patentability of an issued patent based on prior art patents and printed publications specifically identified by the requestor.  *See* 35 U.S.C. §§ 301-307.

either declines both requests to reexamine the Patents-in-Suit, or completes its reexamination of the Patents-in-Suit and renders a final decision.  It is possible that the reexamination proceedings for the Patents-in-Suit may moot this case entirely because the PTO may determine that the Patents-in-Suit do not claim patentable inventions.  Even if the Patents-in-Suit survive the reexamination, the scope of Claims of the Patents-in-Suit that are ultimately litigated in this case will almost certainly be different from the Claims now asserted by COOK.[2]  In view of the substantial probability that the litigated Claims of the Patents-in-Suit will either be cancelled, amended, or have their scope clarified by the PTO, staying the case now, at its outset, will undoubtedly streamline the issues to be litigated later and allow the case to benefit from the PTO's expertise.

Cook will not be harmed by an additional delay which may be caused by the stay.  The '706 Patent has expired[3] and the '777 Patent has less than two years yet to run.[4]  In view of these facts and COOK's delay in bringing this lawsuit, described more fully in section II.C.1, the only practical remedy open to COOK in this case is damages.  Accordingly COOK will suffer no prejudice from a stay of this litigation and indeed will benefit from not having to deal with two, possibly inconsistent, procedures running in tandem.

District courts regularly grant requests for a stay in these circumstances.  The absence of a stay would likely waste the valuable resources of both this Court and the parties in exploring and arguing issues that may ultimately be mooted or, at a minimum, substantially changed following the reexamination.  ENDLOGIX has proceeded promptly by filing the reexamination

---

[2]  Because the '706 patent has expired, the PTO cannot amend its claims; it may either cancel the Claims or leave them unaltered.

[3]  Pursuant to 35 U.S.C. § 154(c), the patent term of the '706 patent extended 20 years from the earliest claimed filing date, October 17, 1989.  Thus, the '706 patent expired on October 17, 2009.

[4]  Pursuant to 35 U.S.C § 154(a), the patent term of the '777 patent extends 20 years from the earliest claimed filing date, October 25, 1991.  Thus, the '777 patent expires on October 25, 2011.

requests and this motion only days after answering the Complaint.   Discovery has not commenced, no claim construction hearing has been conducted or scheduled, and the Court has not set pretrial or trial dates.   Staying the case in this early posture will allow the PTO to eliminate issues in this case — if not moot this case entirely — and provide guidance to this Court if this case ever needs to proceed.

ENDOLOGIX's Counsel informed COOK's Counsel by email on November 17, 2009 of ENDOLOGIX's intention to seek a stay of this action in view of the request for reexamination of the '777 Patent, and invited COOK to consent to a stay.   COOK has declined ENDOLOGIX's request and so ENDOLOGIX now moves this Court for a stay.

## II.  A STAY IS APPROPRIATE IN THIS CASE

### A.  Courts Routinely Grant Stays Pending Patent Reexaminations Proceedings

Reexamination is a statutory procedure that requires the PTO to reopen prosecution to re-evaluate patentability of an issued patent based on specifically identified prior art patents or publications that raise "a substantial new question of patentability."  35 U.S.C. §§ 302-303.  The PTO must determine whether to initiate the reexamination proceedings within 3 months of a request.  35 U.S.C. § 303.  Once the PTO has determined that a substantial new question of patentability has been raised and thus grants the reexamination request, there are three possible outcomes: (1) the patent is cancelled; (2) the patent Claims are amended to change the scope of the patent; or (3) the patent Claims are confirmed without amendment.  *See* 35 U.S.C. § 307(a).

Current statistics reveal that the PTO grants approximately 92% of *ex parte*[5] reexamination requests.   (Stowell Decl. Ex. 1, "Ex Parte Reexamination Filing Data – September 30, 2009".)  In approximately 75% of these granted reexaminations, the Claims are either cancelled or amended.  Approximately 11% of *ex parte* reexaminations result in all Claims

---

[5]  The proceedings in the PTO will be *ex parte* in the sense that only COOK as the patentee and the PTO will participate, as is the case in most PTO proceedings.  35 U.S.C. § 305. In general, ENDOLOGIX does not have the opportunity to file additional papers beyond the re-examination request it has filed.

being cancelled and 64% of reexaminations result in amendments to the claims. *Id.* Thus, the vast majority of reexaminations moot any pending litigation or substantially alter the landscape of the litigation by changing the scope of the patent claims.

These statistics explain why stays pending the outcome of reexamination proceedings are common in district court patent proceedings. It is well settled that courts have inherent power to control their own dockets, including by staying a case pending the outcome of a patent reexamination proceeding. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985), *modified on other grounds*, 771 F.2d 480 (Fed. Cir. 1985). Although a stay is discretionary, most districts liberally grant such motions. *See*, *e.g.*, *Sorensen v. Digital Networks N. Am. Inc.*, No. C 07-05568 JSW, 2008 WL 152179, at *1 (N.D. Cal. Jan. 16, 2008) (citing *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("There is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.'")); *Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 WL 3104794, at *3 (E.D. Mich. Oct. 22, 2007) (same); *Card Tech. Corp. v. DataCard Corp.,* Civil No. 05-2546 (MJD/SRN), 2007 WL 551615, at *3 (D. Minn. Feb. 21, 2007) ("In short, common sense counsels that it is usually prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents."); *Softview Computer Prods. Corp. v. Haworth, Inc.,* No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) ("Courts have routinely stayed infringement actions pending the outcome of reexamination proceedings.").

In general, courts are in agreement that three factors affect the decision to grant a stay. As the Southern District of Indiana articulated in its 2005 *Centillion* decision, the factors are: "(i) whether a stay would unduly prejudice or tactically disadvantage the non-moving party; (ii) whether a stay will simplify the issues in question and streamline the trial; and (iii) whether a

stay will reduce the burden of litigation on the parties and on the court." *Centillion Data Sys., LLC, v. Convergys Corp.*, No. 1:04-CV-0073-LJM-WTL, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005) (citing *Xerox Corp. v. 3 Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)). In addition, the courts have recognized a number of advantages to granting a stay pending the resolution of a reexamination proceeding:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO reexamination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without further use of the Court.

5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Softview*, 2000 WL 1134471, at *2.

A grant of a stay pending reexamination is common in the majority of district courts, particularly at the early stages of litigation. *See, e.g., SKF Condition Monitoring, Inc. v. SAT Corp.,* No. 07CV1116 BTM (NLS), 2008 WL 706851, at *7 (S.D. Cal. Feb. 27, 2008); *Sorensen*, 2008 WL 152179, at *3; *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707, at *6 (D. Del. Sept. 30, 2007); *Lincoln Elec. Co. v. Miller Elec. Mfg. Co.*, No. 1:06CV02981, 2007 WL 2670039, at *3 (N.D. Ohio Sept. 7, 2007); *Card Tech.,* 2007 WL 551615, at *8.

In the majority of cases where a court denied a stay of litigation pending reexamination, the litigation had already proceeded through an advanced stage, often the close of discovery or well beyond. *E.g., Cynosure, Inc. v. Cooltouch Inc.,* Civil Action No. 08-10026-NMG, 2009 WL 2462565, at *2-3 (D. Mass. Aug. 10, 2009) (refusing to stay litigation pending

reexamination when motion to stay was filed after close of fact discovery and only two days before close of expert discovery); *Storus Corp. v. Aroa Mktg., Inc.*, No. C-06-2454 MMC, 2008 WL 540785, at *1 (N.D. Cal. Feb. 25, 2008) (refusing to grant motion to stay pending reexamination when the motion to stay was filed only three weeks before trial); *Eolas Techs. Inc. v. Microsoft Corp.*, No. 99 C 0626, 2004 WL 170334, at *6 (N.D. Ill. Mar. 1, 2002) (refusing to stay entry of judgment when the reexamination was ordered well into the briefing period of post-trial motions), *vacated in part on other grounds by* 399 F.3d 1325 (Fed. Cir. 2005).

In *Centillion*, the Southern District of Indiana acknowledged that "to proceed with this litigation through claim construction and a trial without the benefit of a decision on the petition for reexamination by the PTO may in fact waste resources," but nevertheless refused to stay the proceedings because the case had already been delayed eighteen months due to defendants' jurisdictional challenge and Rule 11 motion challenging the allegations in the Complaint. *Centillion*, 2005 WL 2045786, at *1. None of these sources of delay are present in this case. In fact, ENDOLOGIX moved expeditiously to initiate the reexaminations of the Patents-in-Suit and file the instant Motion.

**B.**     **There Is A Sound Basis For The Reexamination Of the Patents-in- Suit**

The Patents-in-Suit relate to: 1) a stent, which is a small tubular wire cage which can be placed within a patient's blood vessel, and 2) a catheter, or elongated tube, used during the surgical procedure to deliver the stent to the desired location by advancing the catheter through the patient's blood vessel. ENDOLOGIX's requests for reexamination of the Patents-in-Suit cast serious doubt on the validity of the Claims at issue in this case in light of prior patents that were not considered by the PTO when it originally decided to issue the Patents-in-Suit, and which show the same stent and catheter designs that COOK now asserts its patents cover.

With regard to the '777 patent, ENDOLOGIX has requested reexamination of Claims 1 and 11 based on U.S. Patent No. 4,665,918 to Garza et al. ("Garza"). (Stowell Decl. Ex. 2.) Like the '777 patent, Garza also discloses a system and method for implanting a prosthesis in a patient's vessel. *Id.* The PTO did not previously consider Garza when it originally issued the

'777 patent.  Garza qualifies as anticipatory prior art under 35 U.S.C. § 102(b) because it was published over one year before the earliest filing date of the '777 patent and discloses all of the limitations of Claims 1 and 11.  *See Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.,* No. 2009-1018, 2009 WL 3855928 (Fed. Cir. Nov. 19, 2009) (invalidating a patent based on 35 U.S.C. § 102(b)).  Claims 1 and 11 of the '777 patent are almost identical to each other thus, ENDOLOGIX will focus on Claim 1 for simplicity.[6]

In essence, the '777 patent relates to a catheter that has an elongated "sheath" or tube, and a "carrier" that fits within the sheath and that carries the stent.  The carrier has a "head" which extends out of the sheath and is shaped to allow it to open the blood vessel, a "shaft" which is contained within the sheath, and a narrower region or "stem" around which the stent is positioned.[7]  Below is a comparison between Figure 12 from the '777 patent and Figure 6 from Garza.  Each figure has been labeled with the key elements of Claim 1.  As the figures demonstrate, Garza discloses each and every limitation of Claims 1 and 11 and consequently renders Claims 1 and 11 invalid.[8]

---

[6] Claim 1 and Claim 11 differ in only two minor ways.  First, Claim 1 recites a "tubular introducer sheath," whereas Claim 11 recites an "introducer sheath."  Second, Claim 1 recites a "uniform sheath bore," whereas Claim 11 recites a "sheath bore of substantially constant diameter."  (Compl. Ex. A at col. 20, line 28-col. 21, line 28.)

[7] Claim 1 expressly recites:

> 1. A self-expanding prosthesis delivery system comprising:
> a **tubular introducer sheath (yellow)** having a sheath bore of a substantially constant diameter extending longitudinally therethrough; and
> a **central carrier** coaxially positionable within said sheath bore of said sheath, said central carrier including
> a **vascular dilator head region** having a fixed shape and a portion mating with and approximating said substantially constant diameter of said sheath bore,
> a **shaft region** approximating said substantially constant diameter of said sheath bore,
> and a **stem region** positioned between said head and shaft regions and being smaller than said substantially constant diameter of said sheath bore for positioning coaxially a self-expanding prosthesis therearound and in said sheath bore.  (emphasis added).

[8] For purposes of this analysis, ENDOLOGIX adopts COOK's broad construction of the



**Figure 12 – '777 Patent**

**Vascular Dilator Head Region**   **Central Carrier (Outlined)**   **Stent**   **Stem Region**   **Tubular Introducer Sheath (Yellow)**   **Shaft Region**

**Figure 6 – Garza Patent**

With regard to the '706 patent, which has already expired, ENDOLOGIX has requested reexamination of Claims 6 and 12 based on several references including U.S. Patent No. 3,498,335 to Cook ("'335 patent"). (Stowell Decl. Ex. 3.) The '335 patent discloses a self-closing tube or sheath for facilitating fluid transport. *Id.* The PTO did not previously consider the '335 patent when it originally issued the '706 patent. The '335 patent qualifies as anticipatory prior art under 35 U.S.C. § 102(b) because it was published over one year before the earliest filing date of the '706 patent and discloses all of the limitations of Claims 6 and 12. Claims 6 and 12 of the '706 patent claim virtually the same subject matter, thus, ENDOLOGIX will focus on Claim 12 for simplicity.[9]

In essence, the '706 patent relates to a tubular wire cage, such as a stent, formed from two

---

Patents-in-Suit made evident through its allegations of infringement. ENDLOLOGIX reserves its right to assert that a narrower construction, which does not result in infringement, is applicable.

[9] Claim 12 recites a "stent assembly" and Claim 6 recites the method for combining two stents to form the stent assembly of Claim 12. (Compl. Ex. B at col. 7, line 13-col. 8, line 59.)

ring-shaped sections joined together.    Each section is made from wire bent into a "zig-zag" shape.  To join the sections together, the bends of one section pass through "eyes" formed at the bends of the other section.[10]

Wire stents made from zig-zag sections were known when COOK filed for the '706 patent.  What the PTO did not consider when it decided to grant the patent to COOK is that prior patents also showed joined zig-zag sections using eyes.  Below is a comparison between Figure 6 of the '706 patent and Figure 7 of Cook.  As the figures demonstrate, Cook discloses each and every physical limitation of Claims 6 and 12.  Further, Cook discloses that the structure depicted in Figure 7 is contractable and expandable.  (Stowell Decl. Ex. 3 at col. 3, lines 27-36.)

---

[10]  Claim 12 expressly recites:

12. A stent assembly:
a **first wire** formed into a closed zig-zag configuration including;
    an **endless series of straight sections** having opposite ends, said straight sections being joined by **bends** at said opposite ends to form a first stent; and
a **second wire** formed into a closed zig-zag configuration including;
    a **second endless series of straight sections** having opposite ends, said straight sections being joined by **bends** at said opposite ends to form a second stent;
    a **set of eyes** formed at several of said bends at one of said opposite ends;
wherein said first and second stents are **resiliently contractable** into a smaller first shape for conveyance through a body passageway;
wherein said first and second stents are **resiliently expandable** into a second shape in which the straight sections press against the walls of the body passageway; and
wherein said **set of eyes of said second stent are engaged about said first wire** at one of said opposite ends of said first wire. (emphasis added).



Figure 6 – '706 Patent

Figure 7 – Cook Patent

## C.   The Applicable Factors all Support Granting a Stay

A stay is warranted here because all three factors identified in the *Centillion* decision favor a stay: no prejudice will result to Cook, proceedings will be simplified, and the burden on the Court and the parties will be reduced.

### 1.   A Stay Would Not Unduly Prejudice COOK

COOK cannot show that it would be unduly prejudiced by a stay.  A stay would allow COOK to focus its resources on the reexamination proceedings without the distractions of additional litigation in this Court.  Moreover, COOK would avoid expending resources on unnecessary discovery and issues that the PTO reexamination will likely moot or substantially

alter.  Further, COOK and the Court can avoid having to wrestle with conflicting rulings by awaiting the outcome of the reexamination.

Courts have repeatedly held that the delay of an action due to a co-pending reexamination alone is not sufficient to give rise to "undue delay."  *Sorensen*, 2008 WL 152179, at *2; *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).  Further, any prejudice due to delay is minimized here by ENDOLOGIX's early filing of the reexamination request and the requirement that the PTO conduct all reexaminations with "special dispatch."  35 U.S.C. § 305.

COOK will also suffer no prejudice in the pursuit of a remedy in this litigation.  COOK has not sought a preliminary injunction in this case, thereby acknowledging that this case does not warrant an expedited resolution that would be frustrated by a stay.  This is unsurprising for several reasons.

First, COOK has delayed considerably in bringing this action against ENDOLOGIX. The Patents-in-Suit issued, respectively, eleven and eighteen years ago.  Prior to filing this suit in October 2009, COOK had never once brought the Patents-in-Suit to ENDOLOGIX's attention. Meanwhile, ENDOLOGIX has publicized the fact that its accused Powerlink® stent product obtained conditional FDA approval in 2004.  Stowell Decl. Ex. 4.  COOK has thus waited at least five years to accuse ENDOLOGIX of infringing its '706 Patent.  Similarly, ENDOLOGIX's IntuiTrak® delivery catheter product was made public at least as early as 2008 when it obtained FDA approval.  Stowell Decl. Ex. 5.  COOK was well aware of ENDOLOGIX and its products long before filing this suit.  COOK even pursued a case in this District against ENDOLOGIX and others in 2008 relating to the employment of ex-COOK salesman to sell the very same Powerlink® product COOK now accuses of infringing its patents.  *Cook Medical Inc. v. Griffin*, Case No. 1:08-cv-188-SEB-JMS (S.D. Ind. filed Feb. 06, 2008).  Yet, in that prior suit, COOK made no patent infringement allegations, despite the overlapping factual issues relating to the products in dispute.  (Stowell Decl. Ex. 6 at ¶ 19.)  After splitting its Claims into two separate suits filed 20 months apart, Cook cannot complain about a stay during which the

PTO will address the validity of its patents.

Second, as discussed above, the '706 Patent has already expired, meaning that no additional infringement damages or harm can accrue during the pendency of the reexamination. The '777 Patent has just less than two years to run, meaning that any damages or harm that would occur during the reexamination would be minimal.  Moreover, even without a stay it is unlikely that this case would be tried before the '777 patent expires.  The time frame for claim construction hearing in the Court's Management Plan in Patent Cases is no later than 315 days from filing (paragraph N, Management Plan in Patent Cases), and a final case management conference is to be scheduled 320 days after the Markman ruling (paragraph CC, Management Plan in Patent Cases), for a total of 22 months from filing.  The '777 patent will expire 24 months from filing.  Thus, an injunction after a final judgment is simply not a likely remedy, as both patents will be expired by the time of trial.  A stay pending re-examination will not prejudice COOK.

Third, ENDOLOGIX's accused activities are causing no irreparable harm to COOK.  If ENDOLOGIX is ultimately found liable for infringement, monetary damages will provide an adequate remedy at law.  In fact, by the time this suit is complete, because both patents will have expired, monetary damages will be the only remedy available to COOK.  Additionally, the Court is permitted to award interest on any eventual damages award, negating any ill effects due to any delay.  Thus, ENDOLOGIX would gain no financial advantage if a stay is granted.  For all of these reasons a stay would not unduly burden COOK.

**2.      A Stay Will Simplify The Issues In Question And Streamline The Trial**

Most importantly, judicial economy will be served by taking advantage of the PTO's expertise in considering the prior art to simplify and eliminate extraneous issues in the case.  As mentioned previously, nearly 75% of all reexaminations result in cancelled or amended claims.  Thus, there is a high likelihood that the PTO's actions will impact the infringement allegations in this suit.

Critically, unless a claim emerges from reexamination substantially unchanged, the claim

may not be enforced against any allegedly infringing activity that occurred before the issuance of the reexamination certificate. *Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997). Further, damages are not available for the infringement of an amended patent claim that is substantively different in scope from an original claim until the reexamination certificate issues. *Id.*; 35 U.S.C. §§ 252 & 307(b). Consequently, if any of the Claims at issue in this suit are amended or cancelled during the reexamination, many of the alleged acts of infringement will become irrelevant, along with any related damages claim.

Moreover, the '706 Patent has already expired, so COOK's ability to recover any damages for infringement of any claim of that patent depends entirely on the claim emerging from reexamination. If all the asserted Claims are rejected, ENDOLOGIX cannot be liable for infringement and COOK cannot recover any damages. It would thus be wasteful of both the Court's and the parties' resources to proceed with discovery, a claim construction hearing, and possibly dispositive motions and/or a trial on patent Claims that may not survive the reexamination proceeding.

Similarly, even if the Patents-in-Suit survived the reexamination, other substantive issues are likely to be limited by the reexamination. For example, defendant's noninfringement arguments could be reduced or clarified based on the reexamination proceedings, which will shed light on the proper construction of any surviving claims. *See Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1328, 1331-33 (Fed. Cir. 2003) (to construe a patent's claims, the court should consult the written description and the prosecution history, including the history of reexamination of the patent at issue).

Additionally, this Court could benefit from the PTO's expertise and guidance in how the prior art at issue in the reexamination proceedings affects any Claims of the Patents-in-Suit that may be ultimately confirmed. In fact, "Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO . . . [and to] utilize[e] the PTO's specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (citing H.R. Rep. No. 1307, 96th

Cong., 2d Sess., pt. 7 at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460).  The PTO is in the best position to offer an initial review of the patentability issues because its examiners are specifically trained in the relevant art.  *See Spa Syspatronic, AG v. Verifone, Inc.*, Civil Action No. 2:07-CV-416, 2008 WL 1886020, at *1 (E.D. Tex. Apr. 25, 2008) ("whether or not the PTO ultimately amends or invalidates a patent's Claims during reexamination, the PTO's reexamination provides the Court with an expert funneling of the issues for trial"); *see also Tap Pharm. Prods.*, *Inc. v. Atrix Labs., Inc.,* No. 03 C 7822, 2004 WL 422697, at *2 (N.D. Ill. Mar. 3, 2004) (citing *Gould*, 705 F.2d at 1342) ("As the Federal Circuit has explained, 'one purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings).' ").  Further, a decision from the PTO may also encourage settlement of the matter without further resort to the Court.  *Softview*, 2000 WL 1134471, at *2.

Because the validity of the Patents-in-Suit is a core issue in this litigation the PTO proceedings and this case will necessarily be duplicative.  The determinations in this case will be materially affected if the PTO invalidates or requires amendments to the Claims asserted by COOK.  Accordingly, it would serve the interest of efficiency for this Court to stay this litigation to permit the PTO to consider first the issues presented to it, before proceedings here give rise to the same issues, risking inconsistent results, and a waste of the Court's resources.  Importantly, the PTO's action may wholly, or at least substantially, moot this action.

### 3.     The Reexamination Proceedings Will Reduce The Burden Of This Litigation On The Parties And The Court

The third prong of the test articulated in the *Centillion* decision is closely related to the second prong: a stay would reduce the burden of this case for this Court, as well as for the parties.  ENDOLOGIX has brought this motion before the start of discovery, and before any substantive motions have been decided by this Court.  Thus, only limited resources have presumably been expended by both parties and the Court to date, and the majority of the burden of this case lies in the future.  This burden could be alleviated entirely, or at least substantially

reduced, if the Court stays this litigation pending a final decision from the reexaminations. Should this case proceed without a stay, there is a high likelihood that at least some discovery would be unnecessary and any claim construction proceedings by this Court would need to be repeated, at least in part, following conclusion of the reexamination.  These unnecessary costs and repetitive proceedings can be avoided by staying this litigation.

Additionally, as mentioned above, this Court could potentially benefit from the guidance of the PTO's technical expertise.  As Judge Zagel of the Northern District of Illinois reasoned in *Tap Pharmaceutical*:

> There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope.  This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings.  Simplification of the issues will allow both parties to conserve time and resources.

2004 WL 422697, at *2.

## D.      Discovery Has Not Yet Commenced So The Posture of this Case Favors A Stay

Another factor that some courts consider when deciding whether to grant a motion to stay is the stage of the litigation.  *See, e.g., Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 390 (W.D.N.Y. 2008) (examining "whether discovery is complete and whether a trial date has been set" and granting a stay of a case despite its four year pendency because "little progress has been made in discovery").  Generally, courts consider the completion of discovery, whether a trial date has been set, and the overall stage of the litigation to determine whether resources have already been expended or substantial case deadlines have already passed.  As various judges have observed, "courts 'routinely' issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial."  *Id*. at 389.  The court in *Bausch & Lomb* held that a stay was appropriate despite a four year case pendency because "substantial discovery and motion practice, including a likely *Markman* hearing" remained before the parties would be "trial-ready."  *Id*. at 390; *see also Medicis Pharm. Corp. v. Upsher-Smith Labs., Inc.*, 486 F. Supp. 2d 990, 993-94 (D. Ariz. 2007) (staying litigation after fourteen months when limited discovery had been conducted).

Moreover, a recent district court decision on a motion to stay (brought while a request for reexamination had been filed with the PTO but not yet granted), granted the requested litigation stay with only one month remaining before the final pre-trial conference. *Cross Atl. Capital Partners, Inc. v. Facebook, Inc.*, Civil Action No. 07-2768, 2008 WL 3889539, at *2-3 (E.D. Pa. Aug. 18, 2008) (granting a stay despite the completion of discovery, the completion of summary judgment motions, and the fast approaching trial date). In the present case, only pleadings have been filed, discovery has not even commenced and no claim construction hearing has been scheduled or conducted. The stage of this litigation thus favors granting this Motion to Stay.

### III.  CONCLUSION

In view of the early stage of the case, the lack of prejudice to COOK, and the reduced burden on the Court and the parties that would result, ENDOLOGIX respectfully requests that this Court grant this Motion and stay this litigation pending either the rejection of both of ENDOLOGIX's requests for reexamination of the Patents-in-Suit or final decisions, including appeal, from the reexamination of the Patents-in-Suit.

Respectfully submitted,

Dated:  November 24, 2009          By:  /s/ Daniel K. Burke
                                        Andrew W. Hull (11218-49)
                                        Daniel K. Burke (24572 49)
                                        **Hoover Hull LLP**
                                        111 Monument Circle, Suite 4400
                                        P.O. Box 44989
                                        Indianapolis, IN  46244-0989
                                        Telephone:  (317) 822-4400
                                        Facsimile:  (317) 822-0234

                                        John B. Sganga, Jr. (admitted *pro hac vice*)
                                        J. David Evered (admitted *pro hac vice*)
                                        Joshua J. Stowell (admitted *pro hac vice*)
                                        **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                                        2040 Main Street, Fourteenth Floor
                                        Irvine, CA  92614
                                        Phone: (949) 760-0404
                                        Facsimile: (949) 760-9502

                                        Attorney for Defendant,
                                        ENDOLOGIX, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's Electronic Notification system, this 24th day of November, 2009.

*/s/ Daniel K. Burke*

## TABLE OF CONTENTS

**Page No(s).**

I. BACKGROUND AND SUMMARY .......................................................................... 1

II. A STAY IS APPROPRIATE IN THIS CASE ......................................................... 3

    A.    Courts Routinely Grant Stays Pending Patent
            Reexaminations Proceedings ........................................................... 3

    B.    There Is A Sound Basis For The Reexamination Of the
            Patents-in- Suit ................................................................................ 6

    C.    The Applicable Factors all Support Granting a Stay ..................... 10

            1.    A Stay Would Not Unduly Prejudice COOK .................... 10

            2.    A Stay Will Simplify The Issues In Question And
                  Streamline The Trial ........................................................ 12

            3.    The Reexamination Proceedings Will Reduce The
                  Burden Of This Litigation On The Parties And The
                  Court ............................................................................... 14

    D.    Discovery Has Not Yet Commenced So The Posture of this
            Case Favors A Stay ........................................................................ 15

III. CONCLUSION ................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page No(s).**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc., C.A.*,
   No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ................................................5

*ASCII Corp. v. STD Entm't USA, Inc.*,
   844 F. Supp. 1378 (N.D. Cal. 1994) .................................................................................4

*Bausch & Lomb Inc. v. Rexall Sundown, Inc.*,
   554 F. Supp. 2d 386 (W.D.N.Y. 2008) .................................................................................15

*Bloom Eng'g Co. v. North Am. Mfg. Co.*,
   129 F.3d 1247 (Fed. Cir. 1997).................................................................................13

*Bowers v. Baystate Techs., Inc.*,
   320 F.3d 1317 (Fed. Cir. 2003).................................................................................13

*Canady v. Erbe Elektromedizin GmbH*,
   271 F. Supp. 2d 64 (D.D.C. 2002) .................................................................................13

*Card Tech. Corp. v. DataCard*,
   No. Civil 05-2546 (MJD/SRN), 2007 WL 551615
   (D. Minn. Feb. 21, 2007) .................................................................................4, 5

*Centillion Data Sys., LLC, v. Convergys Corp.*,
   No. 1:04-CV-0073-LJM-WTL, 2005 WL 2045786
   (S.D. Ind. Aug. 24, 2005).................................................................................4, 5, 6, 10, 14

*Cook Medical Inc. v. Griffin*,
   Case No. 1:08-cv-188-SEB-JMS (S.D. Ind. filed Feb. 06, 2008)0 .......................................11

*Cross Atl. Capital Partners, Inc. v. Facebook*,
   No. Civil Action 07-2768, 2008 WL 3889539 (E.D. Pa. Aug. 18, 2008) ............................16

*Cynosure, Inc. v. Cooltouch*,
   No. Civil Action 08-10026-NMG, 2009 WL 2462565
   (D. Mass. Aug. 10, 2009).................................................................................5

*Donnelly Corp. v. Guardian Indus. Corp.*,
   No. 05-74444, 2007 WL 3104794 (E.D. Mich. Oct. 22, 2007).................................................4

*Eolas Techs. Inc. v. Microsoft Corp.*,
   No. 99 C 0626, 2004 WL 170334 (N.D. Ill. Mar. 1, 2002) .....................................................6

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988).................................................................................4

## <u>TABLE OF AUTHORITIES</u>
### *(Continued)*

**Page No(s).**

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983)..............................................................................4, 14

*Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition,*
    *Inc.*, No. 2009-1018, 2009 WL 3855928 (Fed. Cir. Nov. 19, 2009) ......................7

*Lincoln Elec. Co. v. Miller Elec. Mfg. Co.*,
    No. 1:06CV02981, 2007 WL 2670039 (N.D. Ohio Sept. 7, 2007) .........................5

*Medicis Pharm. Corp. v. Upsher-Smith Labs., Inc.*,
    486 F. Supp. 2d 990 (D. Ariz. 2007) ...................................................................15

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985), <u>modified on other grounds,</u>
    771 F.2d 480 (Fed. Cir. 1985)................................................................................4

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
    No. Civ. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)...........11

*SKF Condition Monitoring, Inc. v. SAT Corp.*,
    No. 07CV1116 BTM (NLS), 2008 WL 706851
    (S.D. Cal. Feb. 27, 2008) .......................................................................................5

*Softview Computer Prods. Corp. v. Haworth, Inc.*,
    No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471
    (S.D.N.Y. Aug. 10, 2000) ...........................................................................4, 5, 14

*Sorensen v. Digital Networks N. Am. Inc.*,
    No. C 07-05568 JSW, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008).............4, 5, 11

*Spa Syspatronic, AG v. Verifone*,
    No. Civil Action 2:07-CV-416, 2008 WL 1886020
    (E.D. Tex. Apr. 25 2008) ......................................................................................14

*Storus Corp. v. Aroa Mktg., Inc.*,
    No. C-06-2454 MMC, 2008 WL 540785 (N.D. Cal. Feb. 25, 2008) ......................6

*Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*,
    No. 03 C 7822, 2004 WL 422697 (N.D. Ill. Mar. 3, 2004) .............................14, 15

*Xerox Corp. v. 3 Com Corp.*,
    69 F.Supp.2d 404 (W.D.N.Y. 1999) ......................................................................5

## TABLE OF AUTHORITIES
*(Continued)*

Page No(s).

## OTHER AUTHORITIES

35 U.S.C. §102 .................................................................................................7, 8

35 U.S.C. §154 ....................................................................................................2

35 U.S.C. §252 ..................................................................................................13

35 U.S.C. §301 ....................................................................................................1

35 U.S.C. §302 .................................................................................................1, 3

35 U.S.C. §303 .................................................................................................1, 3

35 U.S.C. §304 ....................................................................................................1

35 U.S.C. §305 ...........................................................................................1, 3, 11

35 U.S.C. §306 ....................................................................................................1

35 U.S.C. §307 ...........................................................................................1, 3, 13