# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| COOK INCORPORATED, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 1:09-cv-1248-WTL-TAB |
| | ) |
| ENDOLOGIX, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING
*EX PARTE* APPLICATION FOR REEXAMINATION OF PATENTS IN SUIT**

Richard A. Kaplan
Bradley G. Lane
Kelly J. Eberspecher
Danielle Anne Phillip
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611
Phone:  (312) 321-4200
Fax:     (312) 321-4299
E-mail:rkaplan@brinkshofer.com
         blane@brinkshofer.com
         keberspecher@brinkshofer.com
         dphillip@brinkshofer.com

Randy L. Campbell
BRINKS HOFER GILSON & LIONE
Capital Center South - Suite 1100
201 North Illinois Street
Indianapolis, Indiana 46204
Phone: (317) 636-0886
Fax:     (317) 634-6701
E-mail:rcampbell@brinkshofer.com

Attorneys for Plaintiff,
COOK INCORPORATED

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.      BACKGROUND ........................................................................................................... 1

II.     ARGUMENT.................................................................................................................. 4

      A.    Endologix's Motion to Stay is Premature ............................................................... 5

      B.    A Stay Of This Case At This Time Will Unduly Prejudice Cook ........................... 7

           1.    Any Delay Of The Merits Will Unduly Prejudice Cook
Because Endologix Operates At Annual Losses And
Cannot Pay Damages ..................................................................................... 7

           2.    A Stay Will Unduly Prejudice Cook's Right To Seek A
Permanent Injunction For Infringement Of The '777 Patent ........................ 8

           3.    A Stay Will Deprive Cook of Relevant Discovery And
Give Endologix An Unfair Tactical Advantage............................................. 9

           4.    Endologix Will Challenge Cook's Patents On The Same
Bases That It Presented In Its Reexaminations, So Its Stay
Motion Is A Delay Tactic ............................................................................... 9

      C.    To Avoid Trial On The Merits, All Claims Must Be Invalidated In
Both Reexaminations, Which Is Extremely Unlikely............................................ 10

           1.    Endologix Overzealously Interprets USPTO Reexamination
Statistics ....................................................................................................... 10

           2.    Endologix's References Do Not Disclose Cook's
Inventions..................................................................................................... 11

      D.    A Stay Will Not Reduce The Burden On The Parties, But A
Prompt Trial Of All Issues Will Assuredly Resolve The Parties'
Differences............................................................................................................ 13

           1.    Reexamination Will Not Resolve All Issues ............................................... 13

           2.    This Case Can Be Ready For Trial On All Issues In About
A Year........................................................................................................... 14

III.    CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Ariba, Inc. v. Emptoris, Inc.*,
    No. 9:07-CV-90, 2007 WL 3132606 (E.D. Tex. Oct. 23, 2007) ........................................ 10, 14

*Bio-Technology Gen. Corp. v. Genentech, Inc*,
    80 F.3d 1553 (Fed. Cir. 1996) ................................................................................................ 10

*Borgwarner, Inc. v. Honeywell Int'l, Inc.*,
    No. 1:07cv184, 2008 WL 2704818 (W.D.N.C. July 7, 2008) ............................................. 6, 10

*Card Tech. Corp. v. DataCard Corp.*,
    No. 05-2546 (MJD/SRN), 2007 WL 551615 (D. Minn. Feb. 21, 2007) .................................. 5

*Centillion Data Sys., LLC. v. Convergys Corp.*,
    No. 1:04-CV-0073-LJM-WTL, 2005 WL 2045786 (S.D. Ind. Aug. 24, 2005) ........................ 5

*Cooper Techs. Co. v. Thomas & Betts Corp.*,
    No. 2:06-CV-242, 2008 WL 906315 (E.D. Tex. Mar. 31, 2008) ................................. 8, 10, 14

*Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*,
    No. 06-1477, 2008 WL 4540394 (W.D. Pa. Oct. 7, 2008) ....................................................... 9

*Donnelly Corp. v. Guardian Indus. Corp.*,
    No. 05-74444, 2007 WL 3104794 (E.D. Mich. Oct. 22, 2007) ................................................ 5

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................................................ 8

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
    520 F.3d 1358 (Fed. Cir. 2008) ................................................................................................ 9

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995) .................................................................................................. 7

*SKF Condition Monitoring, Inc. v. SAT Corp.*,
    No. 07CV1116 BTM (NLS), 2008 WL 706851 (S.D. Cal. Feb. 27, 2008) .............................. 5

*Softview Computer Prods. Corp. v. Haworth Inc.*,
    56 U.S.P.Q. 2d 1633 (S.D.N.Y. 2000) ..................................................................................... 5

*Sorensen v. Digital Networks N. Am. Inc.*,
    No. C 07-05568 JSW, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008) ........................................ 5

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005) ..................................................................................... 5

*Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*,
    No. 03 C 7822, 2004 WL 422697 (N.D. Ill. Mar. 3, 2004) ...................................................... 5

*Tesco Corp. v. Weatherford Int'l, Inc.*,
   599 F. Supp. 2d 848 (S.D. Tex. 2009) ................................................................................. 9, 14

*Tokuyama Corp. v. Vision Dynamics, LLC*,
   No. C 08-2781SBA, 2008 WL 4532565 (N.D. Cal. Oct. 9, 2008) ............................................ 6

**Statutes**

35 U.S.C. § 103 ................................................................................................................................ 9

35 U.S.C. § 282 .............................................................................................................................. 10

35 U.S.C. § 301 .............................................................................................................................. 13

35 U.S.C. § 307 ................................................................................................................................ 8

35 U.S.C. § 311 .............................................................................................................................. 13

**Other Authorities**

Manual of Patent Examining Procedure § 2201 ............................................................................... 8

Manual of Patent Examining Procedure § 2240 ............................................................................. 10

Manual of Patent Examining Procedure § 2247.01 .......................................................................... 6

**Rules**

37 C.F.R. § 1.530 .............................................................................................................................. 6

37 C.F.R. § 1.535 .............................................................................................................................. 6

37 C.F.R. § 1.550(a) .......................................................................................................................... 6

Endologix's stay motion is premature, and should be denied for at least two reasons. First, the U.S. Patent and Trademark Office ("USPTO") has not taken any action on the merits of either patent-in-suit, nor will it do so for at least six (6) months. Under such circumstances, many courts have denied motions to stay, allowing the litigation to proceed. Second, separate and apart from the fact that the USPTO has not acted yet, a stay will unfairly prejudice Cook because it will halt this case for at least two years, if not more, and will enable Endologix to benefit from its infringements in a way that will leave Cook without an adequate remedy.

Notably, because of the expiration dates of the patents, the weak financial condition of Endologix, and the rapidly escalating nature of the infringing sales, there is urgency to having this case move forward without delay. Although the first of Cook's patents has expired, the second is still in force for another couple of years, and a stay will drag out this litigation until after that patent expires, making it impossible for Cook to obtain an injunction, which would otherwise be appropriate. Not only will such a delay unfairly and unduly prejudice Cook by causing it to lose its right to injunctive relief, but Endologix will receive a windfall, continuing to make infringing sales over this period and accumulating damages for infringement that it will later not be in a financial condition to pay. Such a highly prejudicial and unfair situation is completely avoidable, if this case moves forward.

Accordingly, the balance of factors in this case, particularly at this stage when the USPTO has yet to make a decision on the reexamination requests, favors denying the stay motion and moving forward with this case at an expeditious pace.

**I.     BACKGROUND**

This case concerns two Cook patents that relate to an important medical device known as a stent graft that treats abdominal aortic aneurysms, which are life-threatening conditions of the

aorta. One Cook patent, U.S. Patent No. 5,035,706 (the "'706 Patent"), is directed to the stent graft. (Dkt. No. 1, Ex. B.) The second Cook patent, U.S. Patent No. 5,755,777 (the "'777 Patent"), is directed to the delivery system for the stent graft. (Dkt. No. 1, Ex. A.) Cook accuses Endologix of infringement by Endologix's manufacture and sale of the Powerlink stent graft and the IntuiTrak delivery system that incorporates this stent graft. (Dkt. No. 1 ¶¶ 10, 13.)

Cook is a leader in the industry. While Cook and Endologix are direct competitors, Endologix is an upstart that has never made a profit from operations and has an accumulated deficit of over $145 million. (Ex. A (Excerpts of Endologix 2008 10-K) at 4, 5; Ex. B (Excerpts of Endologix 3Q09 10-Q) at 3, 5.) Endologix and Cook are no strangers in litigation. Less than two years ago, in *Cook Medical Inc. v. Griffin*, No. 1:08-cv-188-SEB-JMS (S.D. Ind.), Judge Barker granted a preliminary injunction and a permanent injunction against Endologix for its interference with noncompetition agreements between Cook and four former Cook salespeople.[1] (Ex. C (Excerpts of 3/25/08 PI Hr'g Tr.) at 8-9, 17-18.)

As for this case, over the past five years, Endologix has made and sold over $130 million in Powerlink stent grafts that Cook accuses of infringing the '706 Patent, with the bulk of those sales in the past year or so. Endologix made a full market introduction of its Intuitrak delivery system in the second quarter of this year, (Ex. A at 3), and over the next couple of years, it is estimated that Endologix will sell more than $100 million additional IntuiTrak delivery systems. Cook accuses the Intuitrak delivery system of infringing the '777 Patent, which will not expire until about two years from now. (Ex. G at 2.) Cook makes and sells competing devices and delivery systems, and will be entitled to an injunction to stop further infringing sales, and also

---

[1] The *Griffin* case was originally brought in the Monroe County Circuit Court, (Stowell Decl., Ex. 6 (Dkt. No. 27-7)), and Endologix later removed the case to this Court. As Judge Barker's preliminary injunction ruling makes clear, the case involved breach of noncompetition agreements and not patent infringement. (Ex. C at 8-9.)

2

considerable lost profits damages for past damages based on this infringement.  The damages in this case are continuing to accumulate, and that is why it is important for this case to move to trial quickly so that an injunction can put a cap on the amount of damages and stop any further irreparable harm to Cook.  Although it wants a delay, Endologix has not discontinued selling its infringing IntuiTrak delivery system.

Cook believes that with reasonably prompt discovery, this case can be brought to trial in about a year or so, depending on the Court's docket.  In contrast, Endologix wants to put everything on hold, though the USPTO has not even done anything yet, apparently hoping that it can delay this case long enough to save itself from an injunction, and avoid compensating Cook because of a lack of financial resources to pay damages.  Accordingly, under the particular circumstances of this case, the delay brought about by a stay will be very prejudicial.

On top of that, and contrary to Endologix's assertions in its motion, it is very speculative that both of its reexamination requests will eventually result in USPTO office actions that will invalidate all claims of the '706 Patent and the '777 Patent.  As to the '706 Patent, Endologix is trying to convince the USPTO to reexamine the claims based upon a patent for a fuel line hose assigned to Goodyear Tire & Rubber Company (Stowell Decl., Ex. 3 (Dkt. No. 27-4)), Endologix's so-called "Cook/'335 patent," which has nothing to do with stent grafts.  It is very unlikely that the claims will be impacted by this prior art.  As to the '777 Patent, Endologix's request is based solely on one patent reference (Stowell Decl., Ex. 2 (Dkt. No. 27-3)), the so-called "Garza" reference, that suffers from the same deficiencies as the prior art that was considered by the USPTO when it originally issued the patent.  The invention of the '777 Patent facilitates a smaller profile delivery system by virtue of the use of only two pieces, and not the three pieces of the Garza reference.  The Garza reference's invention cannot be made to be as

3

small as that of the patented invention, which is a considerable benefit when attempting to deliver stent grafts into arteries. Contrary to Endologix's assertions, Endologix is using the patented inventions of the '706 Patent and '777 Patent, and not just the prior art that it relies upon in its reexamination requests.

Finally, at a minimum, Endologix's stay request is just too early. USPTO statistics show that 90% of the time, claims will not be invalidated by an *ex parte* reexamination. Because of the complex reexamination procedure established by the USPTO, an examiner will not act upon the requests for about six months, and nothing will be resolved for at least two years if a reexamination is started. (Stowell Decl., Ex. 1 (Dkt. No. 27-2) at 2 (average pendency is 25.2 months)). In the meantime, much can be accomplished in this case. Because reexamination is limited to evaluation of the prior art, all other issues in this case can only be addressed in this proceeding, and discovery taken in this case will be relevant to issues before the USPTO if a reexamination starts.

The only thing a stay will accomplish is delay and denial of Cook's ability to pursue all available remedies for Endologix's infringement. In view of the undue prejudice to Cook by any delay in this proceeding, the case should move forward expeditiously. Only in this way can a resolution of this matter, by either trial or by settlement, be achieved. The balance of factors is strongly against a stay.

**II.   ARGUMENT**

In deciding whether to stay patent litigation pending reexamination, courts consider (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court. *See Centillion Data Sys.,*

*LLC. v. Convergys Corp.*, No. 1:04-CV-0073-LJM-WTL, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005) (denying stay motion).  A court should grant a stay only if a balance of the factors favors a stay.  *Id.*

Contrary to Endologix's argument, courts do not "routinely" or "generally" grant stays pending USPTO reexamination.[2]  Each motion to stay is considered based upon the circumstances.  For example, in *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662-63 (E.D. Tex. 2005), the Court noted:

> Although there may be circumstances that warrant a stay, the Court is unwilling to adopt a *per se* rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected.  To do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination.  Some of the claims may change in this case, but the Court is of the opinion that the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold.  Firm trial settings resolve cases and reduce litigation costs.

### A. Endologix's Motion to Stay is Premature

Endologix has merely filed **requests** for reexamination of Cook's '706 Patent and Cook's '777 Patent.  The USPTO has not acted upon either request, and so there is no question of

---

[2] The cases relied on by Endologix in support of its assertion that courts "liberally grant" motions to stay pending reexamination and that such grants are common, (Dkt. No. 27 at 4, 5), are distinguishable because in those cases the requests for reexamination had already been granted or reexamination proceedings were underway.  *See*, *e.g.*, *SKF Condition Monitoring, Inc. v. SAT Corp.*, No. 07CV1116 BTM (NLS), 2008 WL 706851, at *1 (S.D. Cal. Feb. 27, 2008) (reexamination requests granted prior to motion to stay); *Sorensen v. Digital Networks N. Am. Inc.*, No. C 07-05568 JSW, 2008 WL 152179, at *2 (N.D. Cal. Jan. 16, 2008) (the reexamination "request was granted even before Sorenson filed the instant lawsuit"); *Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 WL 3104794, at *2-3 (E.D. Mich. Oct. 22, 2007) (all nine requests for reexamination had been granted, first office actions had been issued in six of the reexaminations, patentee had held an interview with the examiner as to one patent and had responded to the first office action prior to the motion to stay); *Card Tech. Corp. v. DataCard Corp.*, No. 05-2546 (MJD/SRN), 2007 WL 551615, at *2 (D. Minn. Feb. 21, 2007) (reexamination requests granted prior to motion to stay); *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1-2 (N.D. Ill. Mar. 3, 2004) (same and any monetary damages could be collected from co-defendant that was a large French multinational corporation); *Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q. 2d 1633, 1634 (S.D.N.Y. 2000) (reexamination requests granted prior to motion to stay).

patentability with respect to any claim at this point. When a motion to stay is based on the mere filing of a reexamination request, denial of a stay motion is warranted:

> The PTO has not granted the defendant's request for reexamination yet, let alone begun the reexamination process. This not only affects the Court's analysis of the second factor, but the third factor as well. That no PTO proceedings are underway creates a delay to the plaintiffs which is prejudicial.

*Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08-2781SBA, 2008 WL 4532565, at *1 (N.D. Cal. Oct. 9, 2008).

Even if a reexamination of either Cook patent is declared by the USPTO, no claim will be amended or invalidated at that time. Rather, a grant of a reexamination request merely indicates that there is a question of patentability as to certain (but not necessarily all) claims. *See*, *e.g.*, Manual of Patent Examining Procedure § 2247.01 ("MPEP") (examples of USPTO reexamination notices) (Ex. F). The patent owner is then given at least two months to provide a patent owner's statement, 37 C.F.R. § 1.530(b), and, if such a statement is filed, the requester has another two months to file a reply. 37 C.F.R. § 1.535. It is only after these submissions that the USPTO proceeds with substantive reexamination and issues a first office action that confirms and/or rejects the validity of some or all claims, 37 C.F.R. § 1.550(a), and that will likely be more than six months from now. Only when there is a first office action is there any likelihood that the claims will be affected by reexamination. Before then, a motion for stay is not ripe and should be denied. *See*, *e.g.*, *Borgwarner, Inc. v. Honeywell Int'l, Inc.*, No. 1:07cv184, 2008 WL 2704818, at *2-3 (W.D.N.C. July 7, 2008) (denying motion to stay without prejudice to reconsider when first office action issued). Because the USPTO has not substantively acted upon the reexamination requests, Endologix's motion is not ripe.

6

### B. A Stay Of This Case At This Time Will Unduly Prejudice Cook

#### 1. Any Delay Of The Merits Will Unduly Prejudice Cook Because Endologix Operates At Annual Losses And Cannot Pay Damages

Since 2005, Endologix has sold over $130 million in Powerlink stent grafts that Cook accuses of infringement of the '706 Patent, (Ex. A at 4, Ex. B at 4, Ex. G (10/29/09 Press Release) at 2),[3] and Endologix expects to sell about $50 million of IntuiTrak delivery systems this year that Cook accuses of infringement of the '777 Patent.  (Ex. G at 2.)  Because Cook and Endologix compete against one another, Endologix will be subject to a lost profits claim in the many tens of millions of dollars.  Further, and because Endologix has failed to cease its activities, Cook's damages will only increase with time.

Moreover, Endologix has been historically undercapitalized, and this year is no exception.  According to Endologix's last quarterly report filed with the Securities and Exchange Commission ("10-Q"), Endologix has only about $21 million in cash, and has lost about $2 million through September of this year. (Ex. B at 3, 5.)  Last year, Endologix lost over $10 million.  (Ex. A at 5.)  Endologix has never made a profit,[4] (Ex. A at 4), and Endologix's last 10-Q states that it has an accumulated deficit of over $145 million.  (Ex. B at 5.)  Given Endologix's precarious financial condition, every day of delay in resolution of the merits will unduly prejudice Cook by increasing the likelihood that Endologix will be unable to pay damages, leaving Cook inadequately compensated.

---

[3] Discovery has yet to commence, and so the exact amount of infringing sales has yet to be determined as well as what, if any, design changes have been made to the accused devices.

[4] Endologix's losses while infringing Cook's patents do not adversely affect Cook's lost profits damages because the law requires analysis of Cook's lost profits, not Endologix's financials.  *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) ("the general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement" (citations omitted)), *cert. denied*, 516 U.S. 867 (1995).

7

Because the parties directly compete against one another, a stay would unduly prejudice Cook, and the stay motion should be denied. *See*, *e.g.*, *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-CV-242, 2008 WL 906315, at *1 (E.D. Tex. Mar. 31, 2008).

### 2. A Stay Will Unduly Prejudice Cook's Right To Seek A Permanent Injunction For Infringement Of The '777 Patent

Instituting a stay now will particularly prejudice Cook in that the '777 Patent is fully enforceable and will not expire for about two years.[5] However, a stay will delay the merits in excess of two years because the average pendency for *ex parte* reexaminations **exceeds two years**. (Stowell Decl., Ex. 1 (Dkt. No. 27-2) at 2.) In addition, the USPTO will not cancel claims until after the time for appeal has expired and any appeals have terminated, and thus the process may take significantly longer than two years if there is an appeal to the Board of Patent Appeals and Interferences and then to the Court of Appeals for the Federal Circuit. *See* 35 U.S.C. § 307; *see also* MPEP § 2201 (Ex. D) at 2 (USPTO *ex parte* reexamination procedure flow diagrams).

A stay instituted now will guarantee that the merits cannot be tried within the statutory life of the '777 Patent and thereby effectively foreclose Cook from pursuing a permanent injunction for Endologix's infringement under 35 U.S.C. § 283. Cook would be unduly prejudiced in enforcement of the '777 Patent by a stay. *Cf. Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463-64 (Fed. Cir. 1990) ("The public policy favoring expeditious resolution of disputes is of particular weight when dealing with **wasting assets** such as patents." (emphasis in original)).

---

[5] Endologix did not have a full market launch of the Intuitrak delivery system until the second quarter of this year. (Ex. A at 3.) Cook promptly filed this action for infringement of the '777 Patent by this new Endologix system within a week of the third quarter of this year.

8

### 3. A Stay Will Deprive Cook of Relevant Discovery And Give Endologix An Unfair Tactical Advantage

A stay before permitting Cook any discovery will unduly prejudice Cook's ability to defend the patentability of its inventions. Endologix's reexamination requests attempt to invalidate Cook's patents based on obviousness pursuant to 35 U.S.C. § 103, but such arguments can be rebutted with objective indicia of nonobviousness, which include copying, failure to design a commercially acceptable device, and commercial success by infringing devices. *See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008) (affirming nonobviousness based on, *inter alia*, objective evidence of nonobviousness). Here, Endologix had a poorly designed delivery system before it introduced its infringing IntuiTrak system, (Ex. G at 1), and evidence of Endologix's past commercial failures will demonstrate long felt need and features and benefits of the patented inventions that show patentability. A stay will prevent Cook from obtaining discovery from Endologix demonstrating nonobviousness and patentability, and will unduly prejudice Cook. *Cf. Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 852 (S.D. Tex. 2009).

### 4. Endologix Will Challenge Cook's Patents On The Same Bases That It Presented In Its Reexaminations, So Its Stay Motion Is A Delay Tactic

Further, after termination of the USPTO *ex parte* reexamination, Endologix will not be estopped or prevented in any way from asserting the very same invalidity arguments again in this lawsuit. Consequently, Endologix will likely run the very same invalidity arguments in this Court that were rejected in reexamination. This too unduly prejudices Cook and weighs against a stay. *See Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, No. 06-1477, 2008 WL 4540394, at *2 (W.D. Pa. Oct. 7, 2008) ("Plaintiff undoubtedly would suffer prejudice given the lengthy delay caused by the reexamination process *and* Defendant's ability to challenge patent

9

validity regardless of the outcome" (emphasis in original)); *see also Borgwarner*, 2008 WL 2704818, at *2; *Cooper Techs.*, 2008 WL 906315, at *2.

### C. To Avoid Trial On The Merits, All Claims Must Be Invalidated In Both Reexaminations, Which Is Extremely Unlikely

#### 1. Endologix Overzealously Interprets USPTO Reexamination Statistics

Endologix paints an optimistic and misleading picture of the statistical likelihood that its reexamination requests will preclude later determination of the merits. Every patent claim is presumed valid separate and apart from every other claim, 35 U.S.C. § 282, and patent infringement is found if just one patent claim is infringed. *Bio-Technology Gen. Corp. v. Genentech, Inc*, 80 F.3d 1553, 1562 n.8 (Fed. Cir. 1996) ("Infringement of one valid and enforceable patent claim is all that is required for liability to arise."), *cert. denied*, 519 U.S. 911 (1996).

As the USPTO statistics dated September 30, 2009 show, almost 90% of all patents survive reexamination. (Stowell Decl., Ex. 1 (Dkt. No. 27-2) at 2.) *See also Ariba, Inc. v. Emptoris, Inc.*, No. 9:07-CV-90, 2007 WL 3132606, at *2 (E.D. Tex. Oct. 23, 2007) ("Statistically, 90% of all reexaminations result in confirmation of at least some of the claims in a patent. Therefore, even after reexamination, if only one claim remained, invalidity would continue to be an issue, and so a stay would not preserve many resources."). Cook is asserting two patents in this case, and so the odds are even less favorable for Endologix's hope that both patents will be invalidated in reexamination.[6]

---

[6] Although Cook's complaint alleges infringement of certain claims of the '706 Patent and '777 Patent, discovery will likely show infringement of at least one dependent claim. For example, Claim 7 of the '706 Patent is directed to a method of forming a stent assembly, and discovery of Endologix's manufacturing process may very well show infringement of this claim. Endologix's reexamination requests do not address Claim 7 of the '706 Patent. Because it is USPTO policy not to reexamine claims that were not requested to be reexamined, MPEP § 2240 (Ex. E) at 2, and each claim is presumed valid independently of every other claim, 35 U.S.C. § 282, Endologix's perfunctory and limited reexamination requests will not resolve all issues.

**2.     Endologix's References Do Not Disclose Cook's Inventions**

Apart from the statistical unlikelihood that Endologix's reexamination requests will materially alter the issues in this case, the substance of the references Endologix relies upon in the reexamination requests are far from compelling.  Endologix's reexamination request on the '706 Patent is based on what Endologix calls "Figure 7 – Cook Patent" or Figure 7 of U.S. Patent No. 3,498,335.  However, contrary to Endologix's assertions, this prior art reference was <u>not</u> issued "to Cook," (Dkt. No. 27 at 8), but rather to Richard L. Cook and assigned to "The Goodyear Tire & Rubber Company," (Stowell Decl., Ex. 3 (Dkt. No. 27-4) at 1:3-4),[7] and has no relationship with plaintiff Cook.  Although there are many distinctions between the invention of the '706 Patent and this Goodyear reference, entitled "Self-Closing Tube," it is clear that the Goodyear reference is a fuel line hose that closes when it is contracted – and stays "locked" closed so that fuel will not spill out.  (Stowell Decl., Ex. 3 (Dkt. No. 27-4) at 2:69-72 ("the fuel line … reaches its maximum elongation at which time, it will be fully closed and locked so that no fuel loss can occur"), 3:39-44 ("the constrictor sheath 28 is made of ductile wire … which will lock the constrictor in the closed position … thereby preventing it from reopening and permitting fluid to flow from the broken ends of the tube 23").)  Figure 5 of the Goodyear reference illustrates that its purpose is to close and stay closed:

---

[7] Citations to the written description of patents herein may use the "column:line" citation convention.  For example, "1:3-4" cites to column 1, lines 3-4.

11



This Goodyear reference is just the opposite of the <u>resilient</u>, <u>self-expanding</u> multi-stent assembly claimed in Cook's '706 Patent. The self-expanding stents of Cook's '706 Patent spring open when released from a catheter. The Goodyear reference is <u>ductile</u> wire that closes when compressed and stays closed. (Stowell Decl., Ex. 3 (Dkt. No. 27-4) at 3:39-41.) Indeed, the Goodyear reference is not directed to a stent assembly at all, but rather a fuel line hose.

Endologix's other reexamination request, directed to the invention of Cook's '777 Patent, is based upon a single prior art reference that lacks important features of Cook's invention. The sole basis for Endologix's request is the Garza patent, U.S. Patent No. 4,665,918, and Garza expressly states its delivery system is a three component system – guiding catheter 78, sleeve 50, and delivery catheter 18. (Stowell Decl., Ex. 2 (Dkt. No. 27-3) at 2:2-10 ("guiding catheter [78] is also provided, and fits about the outer periphery of the sleeve [50]. Locking means for selectively locking the sheath with the delivery catheter, and the delivery catheter with the guiding catheter … [is] provided … to hold the entire assembly together during insertion into the patient's body….").) The Garza reference has a <u>three</u> component system that necessarily creates a larger diameter delivery system, and this is the same deficiency as the prior art considered by the USPTO before the ''777 Patent issued. Figures 10a and 11a of Garza, showing the three components, are illustrative:

12



In contrast, the claimed inventions of Cook's '777 Patent are directed to a two component delivery system, among other things. This feature of the '777 Patent, among others lacking in the Garza reference, has significant real world benefits in that the patented invention has a smaller diameter profile, and thus can provide better access to arteries for delivery of self-expanding stent grafts.

Endologix's reexamination requests are based on references that do not disclose the inventive features of the '706 Patent or the '777 Patent.

### D. A Stay Will Not Reduce The Burden On The Parties, But A Prompt Trial Of All Issues Will Assuredly Resolve The Parties' Differences

#### 1. Reexamination Will Not Resolve All Issues

Even if a reexamination is declared, it can only address a fraction of the issues before this Court because the USPTO can only consider invalidity based on prior art. 35 U.S.C. §§ 301 and 311(b)(2). Reexamination cannot address Endologix's noninfringement or other grounds for invalidity that Endologix raises as affirmative defenses and declaratory judgment counterclaims. (*See*, *e.g.*, Answer (Dkt. No. 17) ¶¶ 19-22 & Counterclaim (Dkt. No. 17) ¶¶ 5-24.) Reexamination also cannot address Endologix's other defenses – and there are at least nine, such as laches, estoppel, and waiver – that Endologix will assert in this case. (*See*, *e.g.*, Answer (Dkt. No. 17) ¶¶ 24-26.) As noted above, almost 90% of all reexaminations result in claims that survive reexamination, and with just one claim surviving reexamination, validity and infringement, along with Endologix's other defenses and counterclaims, will remain to be tried.

13

A stay will not preserve many resources. *See Ariba,* 2007 WL 3132606, at *2 (noting laches, estoppel and waiver defenses are not addressed in reexamination and concluding a stay of litigation was not justified because "[w]hile a stay always has the potential to simplify the issues in the litigation to some extent, infringement and other invalidity arguments will remain").

Because some, if not all, of the patents' claims likely will survive reexamination, waiting for the completion of a reexamination is a speculative factor at this point, and does not support a stay. *Tesco*, 599 F. Supp. 2d at 853; *Cooper Techs.*, 2008 WL 906315, at *1.

### 2. This Case Can Be Ready For Trial On All Issues In About A Year

On November 19, and well before Endologix's motion to stay, Cook proposed a case schedule that would commence discovery in November and have this case ready for trial on the merits by March, 2011.[8] (Ex. I.) This schedule is realistic because this patent case is not like a complicated abbreviated new drug application ("ANDA") patent case, and therefore does not require a timetable that stretches to the outer limits prescribed by this Court's Instructions for Preparing Case Management Plan in Patent Cases (identifying schedule deadlines by dates "no later than" certain days from an anchor date).

In the time since Cook proposed moving forward with discovery, Endologix has now identified the material claim limitations for both patents in suit, since it has filed reexamination requests on both patents, and Endologix can therefore proceed to discovery on all issues within the time frame proposed by Cook. Indeed, Endologix has recently issued a press release stating that it has non-infringement and other defenses for this case. (Ex. H.) Clearly, Endologix has had sufficient time to identify and consider the issues to litigate, and can commence with

---

[8] In response, Endologix refused to confer about discovery pursuant to Fed. R. Civ. P. 26(f), (Ex. J), and instead filed its reexamination request on the '706 Patent based on the Goodyear fuel line hose reference and then this motion to stay.

14

discovery.

### III. CONCLUSION

The balance of the relevant factors weighs heavily against a stay of this case. Cook respectfully requests that this Court deny Endologix's motion so as to permit discovery and claim construction activities to commence as soon as practicable.

Dated:  December 11, 2009  Respectfully submitted,

/s/ Bradley G. Lane
Richard A. Kaplan
Bradley G. Lane
Kelly J. Eberspecher
Danielle Anne Phillip
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611
Phone:  (312) 321-4200
Fax:    (312) 321-4299
E-mail:rkaplan@brinkshofer.com
       blane@brinkshofer.com
       keberspecher@brinkshofer.com
       dphillip@brinkshofer.com

Randy L. Campbell
BRINKS HOFER GILSON & LIONE
Capital Center South - Suite 1100
201 North Illinois Street
Indianapolis, Indiana 46204
Phone: (317) 636-0886
Fax:    (317) 634-6701
E-mail:rcampbell@brinkshofer.com

Attorneys for Plaintiff,
COOK INCORPORATED

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2009, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Andrew W. Hull
>Daniel K. Burke
>HOOVER HULL LLP
>E-mail:ahull@hooverhull.com
>         dburke@hooverhull.com
>
>and
>
>John B. Sganga, Jr.
>J. David Evered
>Joshua J. Stowell
>KNOBBE, MARTENS, OLSON & BEAR, LLP
>E-mail:john_sganga@kmob.com
>         jdavid_evered@kmob.com
>         joshua_stowell@kmob.com

I further hereby certify that on December 11, 2009, a copy of the foregoing document was served by hand on the following:

>Andrew W. Hull
>Daniel K. Burke
>HOOVER HULL LLP
>111 Monument Circle, Suite 4400
>Indianapolis, Indiana  46244


>/s/  Randy L. Campbell
>Attorney for Plaintiff,
>COOK INCORPORATED