UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COOK INCORPORATED, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:09-cv-1248 WTL-TAB |
| | ) | |
| ENDOLOGIX, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | _____ |
| ENDOLOGIX, INC., | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK INCORPORATED, | ) | |
| Counterdefendant. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO STAY PROCEEDINGS PENDING *EX PARTE* APPLICATION FOR
REEXAMINATION OF PATENTS-IN-SUIT**

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ..............................................................................................1

II.  THE PTO HAS ALREADY GRANTED THE FIRST OF ENDOLOGIX'S
REQUESTS FOR REEXAMINATION ..........................................................3

III.  COOK MISUSES PTO DATA TO MISREPRESENT THE EFFECT OF
REEXAMINATIONS ON LITIGATION ........................................................4

IV.  COOK WILL SUFFER NO PREJUDICE AS A RESULT OF A STAY ..........................5

    A.  ENDOLOGIX is a Financially Healthy and Viable Publicly Traded
Company ..............................................................................................5

    B.  COOK's Claims of Damages are Highly Speculative .............................7

    C.  COOK Would Not Obtain a Meaningful Injunction Even If It Proved
Infringement........................................................................................8

    D.  ENDOLOGIX Will Face A Higher Burden If It Challenges COOK's
Patents On The Same Bases As Its Reexamination Requests.................11

    E.  Any Potential Prejudice to COOK Arises From Its Own Undue Delay
in Bringing Suit................................................................................12

V.  A STAY WILL SIMPLIFY THE ISSUES FOR TRIAL AND REDUCE THE
BURDEN ON THE PARTIES AND THIS COURT ........................................13

VI.  COOK DOES NOT EFFECTIVELY DISTINGUISH THE PRIOR ART .......................15

VII.  CONCLUSION...........................................................................................16

# TABLE OF AUTHORITIES

**Page Nos.**

*Am. Hoist & Derrick Co. v. Sowa & Sons,*
  725 F.2d 1350 (Fed. Cir. 1984).........................................................12

*Bloom Eng'g Co. v. North Am. Mfg. Co.,*
  129 F.3d 1247 (Fed. Cir. 1997)........................................................5, 8

*Borgwarner, Inc. v. Honeywell Int'l,*
  No. Civil 1:07cv184, 2008 WL 2704818 (W.D.N.C. July 7, 2008).................13

*Cohesive Techs., Inc. v. Waters Corp.,*
  543 F.3d 1351 (Fed. Cir. 2008)...........................................................8

*Delta Frangible Ammunition, LLC v. Sinterfire,*
  No. Civil Action 06-1477, 2008 WL 4540394 (W.D. Pa. Oct. 7, 2008) ..........13

*Hewlett-Packard Co. v. Acuson Corp.,*
  No. C-93-0808 MHP, 1993 WL 149994 (N.D. Cal. May 5, 1993) .........4, 9, 13

*Ho Keung Tse v. Apple Inc.,*
  No. C 06-06573 SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007)..................3

*eSoft, Inc. v. Blue Coat Sys., Inc.,*
  505 F. Supp. 2d 784 (D. Colo. 2007).....................................................4

*eBay Inc. v. Mercexchange, LLC,*
  547 U.S. 388 (2006)........................................................................10

*Insituform Techs., Inc. v. Liqui-Force Servs., Inc.,*
  No. 08-11916, 2009 WL 1469660 (May 26, 2009)...........................8, 13, 14

*Inteplast Group, Ltd. v. Coroplast, Inc.*
  2009 WL 1774313 ........................................................................12, 13

*KSR Int'l Co. v. Teleflex, Inc.,*
  550 U.S. 398 (2007)........................................................................15

*Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.,*
  No. 1:08-CV-135-JVB-RBC, 2009 WL 1108822 (N.D. Ind. Apr. 24 2009) ...........3, 14

*Pactool Int'l Ltd. v. Dewalt Indus. Tool Co.,*
  No. C06-5367BHS, 2008 WL 312677 (W.D. Wash. Feb. 1, 2008) ..................4

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,*
  575 F.2d 1152 (6th Cir. 1978) ...........................................................8

*Soverain Software LLC v. Amazon.com, Inc.,*
  356 F. Supp. 2d 660 (E.D. Tex. 2005)...................................................13

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page Nos.**

**OTHER AUTHORITIES**

35 U.S.C. § 103............................................................................................................16

35 U.S.C. § 305.............................................................................................................. 9

Defendant/Counterclaimant ENDOLOGIX, Inc. ("ENDOLOGIX") respectfully submits this reply brief in support of its motion to stay the proceedings before this Court pending the outcome of the *ex parte* applications for reexamination of the patents-in-suit currently before the United States Patent and Trademark Office ("PTO"), and in reply to Cook Inc.'s ("COOK's") brief opposing the motion to stay.

## I. <u>INTRODUCTION</u>

Not one of COOK's arguments for denying a stay and pressing ahead with the litigation survives scrutiny. The arguments either fail in light of the PTO's decision to reexamine one of the COOK patents, misleadingly rely on incomplete data, or depend on mere assumption and speculation.

Last week, the PTO granted the first of ENDOLOGIX's two requests for reexamination of the patents-in-suit. In granting the request, the PTO agreed with ENDOLOGIX that the cited prior art created a "substantial new question of patentability" with respect to the asserted claims of COOK's U.S. Patent No. 5,755,777 ("the '777 patent"). The grant of this request undermines COOK's argument that ENDOLOGIX's motion was "premature" because the PTO had not yet granted either of its requests. In light of the PTO's decision, ENDOLOGIX again inquired whether COOK would stipulate to a stay. Disappointingly, COOK has refused to agree to a stay.

COOK's misleading focus on one snippet of ENDOLOGIX's financial data provides no foundation for COOK's assertion that ENDOLOGIX (and therefore any hypothetical right of recovery by COOK) is in jeopardy. To the contrary, ENDOLOGIX is a growing, successful company with over $20 million in cash reserves and which, as COOK acknowledges, is enjoying steadily increasing sales revenues.

COOK's continued opposition to the motion to stay reveals the true strategy behind the present infringement suit and COOK's eagerness to press ahead with it: to drive a financially

smaller "upstart" (as COOK incorrectly describes ENDOLOGIX), and its innovative and commercially successful competitive products, from the marketplace with oppressive litigation. Consistent with this goal, COOK argues to deprive ENDOLOGIX of the benefits of the congressionally enacted reexamination procedure designed to efficiently and inexpensively resolve patent validity issues by utilizing the PTO's specialized expertise in the area of patent law.  Instead, COOK urges pressing ahead with an accelerated litigation timetable designed to force the parties to incur high litigation costs immediately.

COOK's representation that the patents-in-suit will languish in the PTO reexamination for years is entirely unfounded.  The PTO has already granted ENDOLOGIX's first request for reexamination in just under a month, despite having a three month period in which to act.   There is no indication that the PTO will act differently in respect to ENDOLOGIX's other request for reexamination.  Regardless, COOK does not dispute that it waited years to initiate suit, without any justification for delay.  COOK is in no position to raise concerns about the diligence of the PTO, which is obliged to resolve the reexamination with "special dispatch" where the patents are involved in co-pending litigation.

COOK's arguments concerning prejudice are built upon a series of increasingly improbable assumptions, none of which justify the high cost and inefficiencies that would result if the parties were to engage in co-pending proceedings before the PTO and this Court.  In fact, all the indications are that the reexaminations will simplify the issues and ultimately reduce the burden in time and costs on both the parties and the Court.

## II. THE PTO HAS ALREADY GRANTED THE FIRST OF ENDOLOGIX'S REQUESTS FOR REEXAMINATION

On December 10, 2009, the PTO granted ENDOLOGIX's request for reexamination of the '777 patent asserted by COOK in this litigation.  (Supp. Stowell Decl., Ex. 9 at 7.)[1]  In granting the request, the PTO agreed with ENDOLOGIX that "Garza [U.S. Patent No. 4,665,918] raises a substantial new question of patentability with respect to claims 1 and 11 of the '777 patent."  (*Id.*; *see also* Br.[2] 7-8 (describing ENDOLOGIX's position with respect to the Garza reference).)  The PTO will now reexamine all the claims of the '777 patent asserted by COOK in this litigation, and determine their patentability.

The PTO's grant of ENDOLOGIX's request for reexamination of the '777 patent renders moot, or at least severely undermines, COOK's argument that ENDOLOGIX's motion to stay is "premature."  (Opp'n[3] 5-6.)  However, to the extent COOK continues to argue that the motion to stay is premature because the remaining request for reexamination of the now expired U.S. Patent No. 5,035,706 ("the '706 patent") has not yet been granted, that does not raise an obstacle to granting a stay.  The case law establishes that "*a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request*."  *Ho Keung Tse v. Apple Inc.,* No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) (emphasis added).  There are many instances where district courts have stayed litigation before the PTO has granted or denied a reexamination request.  *See Lincoln Nat'l Life Ins. Co. v. Transamerica Fin.*

---

[1] "Supp. Stowell Decl." refers to the Supplemental Declaration of Joshua J. Stowell in Support of Defendant's Motion to Stay Proceedings Pending *Ex Parte* Application for Reexamination of Patents-in-Suit filed concurrently herewith.

[2] "Br." refers to the Memorandum in Support of Defendant's Motion to Stay Proceedings Pending *Ex Parte* Application for Reexamination of the Patents-in-Suit [Doc. #27].

[3] "Opp'n" refers to Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay Proceedings Pending *Ex Parte* Application for Reexamination of Patents in Suit [Doc. #29].

*Life Ins. Co.,* No. 1:08-CV-135-JVB-RBC, 2009 WL 1108822, at *4 (N.D. Ind. Apr. 24, 2009) (granting motion to stay pending the outcome of the PTO's decision whether to grant reexamination); *Pactool Int'l Ltd. v. Dewalt Indus. Tool Co.*, No. C06-5367BHS, 2008 WL 312677, at *1-2 (W.D. Wash. Feb. 1, 2008) (granting a motion to stay filed the same day as a reexamination request and before the PTO granted the request); *eSoft, Inc. v. Blue Coat Sys., Inc.,* 505 F.Supp. 2d 784, 789-790 (D. Colo. 2007) (same); *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 WL 149994, at *4 (N.D. Cal. May 5, 1993) (same).

In fact, the PTO's expedited grant of the '777 reexamination request and the Examiner's current progress in considering the '706 reexamination request, updated regularly on the PTO's Patent Application Information Retrieval ("PAIR") system, suggest that a decision on the request to reexamine the '706 patent will be similarly expeditious and could be imminent.  (Supp. Stowell Decl., Ex. 10.)

For these reasons, COOK's argument that ENDOLOGIX's motion to stay is "premature" is unfounded.

### III.  COOK MISUSES PTO DATA TO MISREPRESENT THE EFFECT OF REEXAMINATIONS ON LITIGATION

COOK's argument that because 90% of all patents survive reexamination, this Court should disregard the widely-acknowledged simplifying effect of reexaminations on related litigation, is misleading.  (Opp'n 10.)  While 90% of patents may survive reexamination, the PTO statistics show that only 25% of those patents exit reexamination truly unscathed and without any amended claims.  (Stowell Decl. Ex. 1 at 2.)[4]

---

[4] "Stowell Decl." refers to the Declaration of Joshua J. Stowell in Support of Defendant's Motion to Stay Proceedings Pending *Ex Parte* Application for Reexamination of Patents in Suit [Doc. #27-1].

There is no dispute that unless the patents can survive without amendment, reexamination will alter and/or eliminate issues to be tried.  Thus the more accurate and pertinent figure is that COOK's patents only have a 25% chance of surviving reexamination.

The '706 patent has already expired, so amending the claims is not an option.  (*See* Br. 2 n.3, 12-13 (explaining the impact of an amendment on the '706 patent).)  There is only a 25% probability that the asserted claims of the '706 patent will exit reexamination completely unscathed, failing which they will be invalidated and COOK's infringement allegations with respect to those claims will be mooted, thereby simplifying the case.

The odds of the '777 patent emerging from reexamination without amendment are equally improbable, although, unlike the '706 patent, COOK will have an opportunity to amend the claims of that patent during its reexamination.  However, even if COOK can successfully amend one of the claims so that it survives reexamination, COOK does not dispute that it will still be unable to collect ***any*** damages for past infringement if the claim has been amended to cover subject matter different in scope from the original claim.  *Bloom Eng'g Co. v. North Am. Mfg. Co.,* 129 F.3d 1247, 1249-250 (Fed. Cir. 1997); 35 U.S.C. §§ 252 & 307(c).  Thus, COOK will also have only a 25% chance that it will be able to collect past damages for ENDOLOGIX's alleged infringement of the '777 patent.

### IV.  COOK WILL SUFFER NO PREJUDICE AS A RESULT OF A STAY

### A.      ENDOLOGIX is a Financially Healthy and Viable Publicly Traded Company

COOK's citation of isolated financial data from ENDOLOGIX's public filings, such as its accumulated deficit, is incomplete and creates a misleading picture of ENDOLOGIX's health and long term viability.  (Opp'n 7.)  During the first nine months of 2009, ENDOLOGIX increased its cash and cash equivalents from $7.6 million to over $21 million, while also reducing its total liabilities from approximately $11.4 million to less than $8 million.  (Opp'n Ex.

B at 3.)   Further, in August 2009, ENDOLOGIX completed a sale of common stock that generated capital of approximately $14.7 million.  (*Id.* at 5; Opp'n Ex. G at 2.)  ENDOLOGIX has also recently negotiated a $10 million line of credit that is presently unused.  (Opp'n Ex. B at 3.)  Since 2005, ENDOLOGIX's quarterly total product revenue has grown from $1.4 million in the first quarter of 2005 to $13.8 million in the third quarter of 2009 – an increase of approximately 885% in just under 5 years.  (Supp. Stowell Decl., Ex. 11.)  ENDOLOGIX's revenue of $13.8 million in the third quarter of 2009 represents a 47% increase over the third quarter of the prior year.  (*Id.*; Opp'n Ex. G at 1.)

While these figures speak for themselves, the ultimate objective measure of the financial health and prospects of ENDOLOGIX is the vote of confidence from both banks and investors who recently supported and invested in the future growth of the company.  This confidence exists despite the $145 million accumulated deficit, which is more a measure of invested capital than any kind of liability as suggested by COOK.  Further evidence of ENDOLOGIX'S financial strength can be seen in the company's stock price, which has increased 305% so far in 2009.

COOK recognizes ENDOLOGIX's success, acknowledging that "over the past five years, Endologix has made and sold over $130 million in Powerlink® stent grafts."  (Opp'n 2.)  Similarly, COOK estimates that "Endologix will sell more than $100 million additional IntuiTrak™ delivery systems" over the next couple of years.  (*Id.*)  These figures speak to the financial health of ENDOLOGIX and its long-term viability as a company, as well as to the growing commercial competition that ENDOLOGIX poses to COOK.[5]

---

[5] COOK's pejorative description of ENDOLOGIX as an "upstart," while revealing COOK's irritation at ENDOLOGIX's successful competitive presence in its market, is somewhat inaccurate as ENDOLOGIX has been in business since 1997.

In spite of the positive financial data and its own admissions regarding ENDOLOGIX's success, COOK argues that "every day of delay in resolution of the merits will unduly prejudice Cook by increasing the likelihood that Endologix will be unable to pay damages." (*Id.* 7). COOK's argument is baseless and belied by the evidence of growth and cash reserves in the published quarterly reports.  If anything, ENDOLOGIX will be in an even better position to pay hypothetical damages in the future as a result of its increasing revenue, cash reserves, and cash flows from operations.  However, ENDOLOGIX's present cash reserves of over $21 million would be sufficient to satisfy any future judgment against ENDOLOGIX.

**B.**    **COOK's Claims of Damages are Highly Speculative**

COOK's claim that it will be entitled to "a lost profits claim in the many tens of millions of dollars" is highly speculative.  (Opp'n 7.)  COOK provides no support or rationale for its estimate of "tens of millions of dollars."   Indeed, COOK's entitlement to ***any*** damages is contingent upon a number of events that are collectively unlikely.  For example, COOK must prove by a preponderance of the evidence that ENDOLOGIX infringes a patent, and that patent also must survive the challenge to its validity.  In light of the PTO's recent decision granting ENDOLOGIX's request for reexamination, a serious question exists regarding the validity of at least the '777 patent.   (Supp. Stowell Decl., Ex 9 at 7.)   Should the PTO also grant ENDOLOGIX's request with respect to the '706 patent, then the validity of all of the asserted claims will be under review, narrowing the odds of COOK having a valid patent, let alone an infringed one.

Further, while COOK's entitlement to damages with respect of the '777 patent will likely be limited by the reexamination process, (*see supra* § III), the outlook is even more bleak with respect to damages for infringement of the '706 patent.  There is no question that, as noted in ENDOLOGIX's opening brief, the '706 patent has already expired.  (Br. 2, n.2.)  Thus, no new

damages will accrue during the pendency of the litigation or reexamination proceedings.  (Br. 12-13.)  Further, because the '706 patent has already expired, COOK will have no opportunity to amend the claims during reexamination – the claims can only be allowed or rejected.  (Supp. Stowell Decl., Ex. 12 at 2200-79 (MPEP § 2250, subpart III).)  If the claims are rejected, COOK does not dispute that it will be precluded from collecting any damages with respect to the '706 patent.  *Bloom,* 129 F.3d at 1249-250; 35 U.S.C. §§ 252 & 307(c).

Finally, even assuming some of the asserted claims survive reexamination, COOK would still have the burden of demonstrating entitlement to lost profits under the *Panduit* factors. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152 (6th Cir. 1978), *cited with approval in Cohesive Techs., Inc. v. Waters Corp.,* 543 F.3d 1351, 1372 (Fed. Cir. 2008).

Thus, given ENDOLOGIX's demonstrated long-term viability and the highly speculative nature of COOK's claim to "tens of millions of dollars" in lost profits, COOK's claim that it will be unduly prejudiced financially by staying the present litigation pending reexamination is unfounded.

## C.      COOK Would Not Obtain a Meaningful Injunction Even If It Proved Infringement

COOK's argument that a stay "will guarantee that the merits cannot be tried within the statutory life of the '777 patent and thereby effectively foreclose COOK from pursuing a permanent injunction" should also be given little weight.  (Opp'n 8.)  As an initial matter, district courts have previously rejected COOK's injunction argument as a basis to override congressional intent and deny a stay of litigation pending the outcome of a reexamination.  *See e.g., Insituform Techs., Inc. v. Liqui-Force Servs., Inc.,* No. 08-11916, 2009 WL 1469660, at *3 (May 26, 2009) ("Plaintiffs also claim that a stay will most likely outlast the life of the patents, which would effectively moot Plaintiffs' request for injunctive relief.  This similarly fails to establish undue prejudice, as the culmination of this matter in trial would significantly decrease the time

remaining before the patents expire."); *Hewlett-Packard Co.,* 1993 WL 149994, at * 4, n. 8 ("The fact that the life of a patent may expire before the stay is up is of no moment; other remedies besides injunctive relief still remain available to HP.").

Moreover, even if this Court were to deny ENDOLOGIX's motion to stay, the '777 patent could nevertheless expire before COOK could obtain final judgment and then a permanent injunction.[6]   Under this District's Uniform Patent Case Management Plan, the parties may conceivably not reach trial until September or October 2011 and no permanent injunction would take effect until some point thereafter.[7]  Yet, COOK does not dispute that the '777 patent expires on October 25, 2011.   (Br. 2, n.4.)   Thus, under the most likely case management scenario, COOK will not have an opportunity to obtain a permanent injunction before the '777 patent expires, even if this Court denies ENDOLOGIX's motion to stay.

Further, COOK's own proposed Case Management Plan (which accelerates the schedule set forth in this District's Uniform Patent Case Management Plan) does not schedule the trial until at least March 2011, in which case no permanent injunction would take effect until April or later.  (Cook Ex. I at 11.)  By that point, the '777 patent will only have 6 months or less left on its term before it expires, hardly worth justifying the denial of the motion to stay and an accelerated case schedule.   (Br. 2, n.4.)   Additionally, the PTO has already demonstrated its ability to move with "special dispatch" with respect to the present requests for reexamination.  35 U.S.C. § 305.  Given this speed, the parties could very well receive a final decision regarding the reexaminations during the litigation, even under COOK's aggressive timetable.  Such a result

---

[6] As noted previously, COOK's '706 patent has already expired.   Therefore, COOK cannot obtain an injunction with respect to this patent, even if it proves past infringement.

[7] ENDOLOGIX has proposed a case management plan consistent with the Uniform Patent Case Management Plan.  (Supp. Stowell Decl. Ex. 13.)

would likely force the parties and the Court to waste valuable judicial resources by revisiting and resetting portions of the case that had already been decided, for example claim construction.

Moreover, COOK's assumption that it can satisfy the standards for obtaining a permanent injunction is also doubtful. In order to obtain a permanent injunction, COOK would not only need to prove that its patent is infringed and rebut ENDOLOGIX's invalidity case, but would also have to satisfy the four-factor test set forth in *eBay Inc. v. Mercexchange, LLC,* 547 U.S. 388, 391 (2006). Two of these factors require COOK to demonstrate that (1) "the public interest would not be disserved by a permanent injunction" and (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury". *Id.* COOK is unlikely to satisfy either of these requirements.

First, COOK fails to address the unquestionable adverse and disruptive effects of even a short-lived injunction. Physicians trained to use ENDOLOGIX's devices would not be able to rely on those devices to treat life threatening abdominal aortic aneurysms. Such a restriction would not only disrupt the medical practices of physicians and hospitals, but would also subject patients to increased risks. ENDOLOGIX's product is unique among all competitors (including COOK) because the device has a different design and fixation technology which enables it to treat a wide range of difficult aortic anatomies. (Supp. Stowell Decl. Exs. 14-15.) Forcing doctors to stop using these life saving devices that service a unique segment of the population would certainly disserve the public interest.

Second, monetary damages would adequately compensate COOK for any adjudged infringement. As previously noted, COOK could only obtain an injunction for a few months at most before the '777 patent expired. COOK has not identified any harm that would occur during that narrow time frame that could not be redressed by a monetary award.

COOK's opposition implies that it and ENDOLOGIX are the only players in the relevant market.  (Opp'n 7.)  However, there are two other well established companies, Medtronic and WL Gore, that also market competing products.  (Supp. Stowell Decl., Ex. 16.)  Thus, an injunction against ENDOLOGIX would not shield COOK or its products from competition in the marketplace.

Finally, the balance of equities does not favor granting equitable relief to COOK.  COOK delayed at least five years in bringing the present infringement suit against ENDOLOGIX.  *Infra* IV.E.  During that time, COOK never once brought the patents-in-suit to the attention of ENDOLOGIX, allowing ENDOLOGIX to continue to make significant sales of the allegedly infringing products.  Moreover, as explained in ENDOLOGIX's opening brief, COOK pursued a case against ENDOLOGIX in 2008 that related to the very same products it now accuses of infringement.  (Br. 11.)  If COOK were truly suffering a hardship as a result of ENDOLOGIX's alleged infringement, it should have brought its infringement suit years ago, or at the very least during its 2008 suit which settled nearly a year before COOK initiated this action.

For all these reasons, COOK has failed to establish that but for a stay it would obtain a meaningful injunction such that a stay would deprive it of this remedy.

**D.     ENDOLOGIX Will Face A Higher Burden If It Challenges COOK's Patents On The Same Bases As Its Reexamination Requests**

COOK's assertion that "Endologix will not be estopped or prevented ***in any way*** from asserting the very same invalidity arguments again in this lawsuit" is wrong.  (Opp'n 9 (emphasis added).)  Although ENDOLOGIX would not be prevented from challenging COOK's patents in this action on the same bases that it presented to the PTO, it would face a higher burden if it did so.  The Federal Circuit has explained:

> when no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference

> that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).  Thus, if the PTO considers and rejects the references presented in the reexamination requests, ENDOLOGIX would face this "added burden" if it decided to reassert the claims before this Court.[8]

**E.   Any Potential Prejudice to COOK Arises From Its Own Undue Delay in Bringing Suit**

To the extent COOK suffers any detriment resulting from the passage of time, the detriment would be solely due to COOK's substantial delay in bringing this suit.  COOK does not dispute that the '706 patent has been enforceable since 1989 and the '777 patent has been enforceable since 1991.  (Br. 2, n.3-4.)  Further, COOK repeatedly admits that ENDOLOGIX has sold the allegedly infringing Powerlink® stent grafts for at least 5 years.  (Opp'n 2, 7.)  Thus, COOK cannot and does not dispute that it has delayed for at least 5 years in initiating the present litigation.  If COOK had real concerns about ENDOLOGIX's long-term viability or COOK's ability to obtain a permanent injunction, it would have brought suit years ago, not after one patent has already expired and the other is on the eve of expiration.  COOK offers no explanation for this substantial delay yet, ironically, now wants to put the case on a fast track to ameliorate the consequences of its own delay.

District courts have concluded that substantial delays, such as COOK's, often counteract any claims of prejudice that may result from granting a stay of a litigation pending

---

[8] Notably, some district courts have rejected COOK's premise, noting that "in creating the reexamination process, Congress countenances a scheme in which a patent's validity may come under attack in both a courtroom and the PTO."  *Inteplast,* 2009 WL 1774313, at *3.

reexamination.[9] *See e.g., Inteplast,* 2009 WL 1774313, at *2 (concluding plaintiff's claim of prejudice was "contradicted by its delay in pursuing its infringement claims" for approximately two years); *Insituform,* 2009 WL 1469660, at *3 ("[A]ny potential prejudice to Plaintiff is belied by Defendant's allegations that (1) Plaintiffs knew of Defendant's allegedly infringing actions for almost six years before commencing the current suit."); *Hewlett-Packard,* 1993 WL 149994, at *2 ("HP's ten year delay in seeking to protect its patented interests weighs heavily against denying [defendant's] motion for stay.").

Thus, because COOK delayed for over five years in bringing this suit, it cannot now claim to be prejudiced by any additional delay caused by a stay of the litigation pending reexamination of the patents-in-suit.   This is particularly true here because, although the litigation before this Court might be delayed, the PTO could completely resolve the case in the interim.

## V.   A STAY WILL SIMPLIFY THE ISSUES FOR TRIAL AND REDUCE THE BURDEN ON THE PARTIES AND THIS COURT

The fact that the PTO will not specifically address all of the issues before this Court, as COOK claims, does not render the PTO's findings and expertise any less helpful to the Court and parties, or diminish the potential impact that the PTO's decision will likely have on the issues in this case.   District courts have recognized that:

---

[9] In fact, many of the cases where a stay was denied cited by COOK in support of its opposition are distinguishable because the defendant in those cases unduly delayed in bringing its reexamination and stay requests.   *See e.g., Delta Frangible Ammunition, LLC v. Sinterfire, Inc.,* Civil Action No. 06-1477, 2008 WL 4540394, at *1 (W.D. Pa. Oct. 7, 2008) ("Defendants delay of approximately 22 months since the filing of this lawsuit to request reexamination further amplifies the Court's concerns."); *Borgwarner, Inc. v. Honeywell Int'l, Inc.,* Civil No. 1:07cv184, 2008 WL 2704818, at *1 (W.D.N.C. July 7, 2008) ("[T]his case had been pending for ten months when the Defendant requested reexamination by the USPTO."); *Soverain Software LLC v. Amazon.com, Inc.,* 356 F.Supp. 2d 660, 662 (E.D. Tex. 2005) (defendant "waited until [the] case was a year old and the Court had held the *Markman* hearing before moving for a stay").

> The issues in [a] case will be simplified regardless of the PTO's disposition.  If the patents are amended or invalidated, Plaintiffs' claims will be modified or mooted.  If the patents are upheld, Defendant's invalidity defense would be significantly undermined or eliminated.  Notwithstanding the outcome, the PTO's findings and expertise will greatly benefit the Court and the parties.

*Insituform,* 2009 WL 1469660, at *3; *see also Lincoln Nat'l,* 2009 WL 1108822, at *4 ("… it is virtually undeniable that a stay followed by a PTO reexamination will simplify the issues in the case and streamline the proceedings.").  If the PTO invalidates each of the asserted claims, a strong possibility given the strong prior art and the extreme similarity between the claims, the reexamination would effectively resolve ***all*** of the issues before this Court.  If COOK no longer had any valid claims to assert, the infringement case would be mooted and ENDOLOGIX would have no need to pursue its affirmative defenses or declaratory judgment counterclaims of patent invalidity and noninfringement.

COOK's claim that "all claims must be invalidated" to avoid a trial on the merits misses the point because the reexaminations will certainly affect, and likely simplify, the issues to be tried.  Contrary to COOK's assertion, the PTO does not have to invalidate "all claims" of the patents in suit to avoid trial – the PTO only needs to invalidate the ***asserted*** or allegedly infringed claims of the patents-in-suit.[10]

COOK's only other argument to justify simultaneous proceedings before the PTO and this Court is its belief that the Examiner should have the benefit of discovery from the Court proceedings.  (Opp'n 9.)  This argument is nonsensical because discovery is not normally available to patentees in proceedings before the PTO, including reexaminations.  (*See* Supp.

---

[10] In fact, ENDOLOGIX only requested reexamination of the asserted claims (claims 1 and 11 of the '777 patent and claims 6 and 12 of the '706 patent).  COOK's assertion that "discovery will likely show infringement of at least one dependent claim," which are not currently asserted, is purely speculative and does not negate the positive impact of the reexaminations.  (Opp'n 10, n.6.)

Stowell Decl. Ex. 17 at 1600-12 (MPEP §2612) ("Congress has not provided the [Patent and Trademark] Office with subpoena power or discovery tools and has not provided the Office with the ability to conduct hearings for eliciting testimony and cross-examination.").)  Thus, COOK's argument that it is entitled to discovery prior to the reexamination is inconsistent with PTO practices and COOK cites no authority that would support such a departure from those practices.

## VI.  COOK DOES NOT EFFECTIVELY DISTINGUISH THE PRIOR ART

COOK's attempts to distinguish the prior art references cited by ENDOLOGIX in the reexamination requests are unconvincing.  For example, while COOK claims that ENDOLOGIX's "Garza" reference cited against the '777 patent "lacks important features of Cook's invention," the PTO clearly disagreed by granting ENDOLOGIX's request for reexamination.  (Opp'n 12.)  In doing so, the PTO agreed with ENDOLOGIX that the reference raised substantial new questions of patentability with respect to the asserted claims of the '777 patent.  (Supp. Stowell Decl. Ex 9 at 7.)

COOK's similar claim that "there are many distinctions between the invention of the '706 patent and" U.S. Patent No. 3,498,335 ("the '355 patent")[11] is equally unconvincing. COOK does not dispute that the '355 patent discloses the "zig-zag" configuration and bend and eye connections disclosed in the '706 patent.  (Br. 9.)  Further, COOK's attempts to dismiss the '355 patent reference because it is not a medical device is at odds with Supreme Court precedent, which instructs that references from other fields may act as invalidating prior art references. *KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398, 417 (2007) ("When a work is available in one field

---

[11] ENDOLOGIX did not intend to suggest in its opening brief that the '355 patent was issued to COOK.  (Opp'n at 11.)  ENDOLOGIX used a common naming convention by referring to the patent by the name of its first inventor, Richard L. Cook, hence the "Cook patent." (Stowell Decl. Ex. 3.)  ENDOLOGIX used a similar convention with respect to the "Garza patent" in its opening brief.  (Br. 7-8.)

of endeavor, design incentives and other market forces can prompt variations of it, either in the same field, or a different one.  If a person of ordinary skill can implement a predictable variation, [35 U.S.C.] § 103 likely bars its patentability.").

COOK also completely ignores the additional four references cited by ENDOLOGIX in its reexamination request that also invalidate the '706 claims.  (Stowell Decl. Ex. 8 at 5, 60-99.)  Moreover, unlike the '355 patent, each of these prior art references is from the medical device field and particularly discloses a stent like those claimed in the '706 patent.  *Id.*

Thus, given the persuasive prior art cited by ENDOLOGIX in the requests for reexamination, at least a portion of the reexaminations are likely to be resolved in favor of ENDOLOGIX and consequently simplify the issues for the Court.

## VII.  **CONCLUSION**

In view of the PTO's recent decision to grant ENDOLOGIX's request for reexamination of the '777 patent, the unconvincing case for prejudice to COOK, COOK's 5 year delay in initiating this litigation and the inevitable resulting simplification of issues and reduced burden

on the parties and Court, ENDOLOGIX respectfully renews its request that this Court grant its motion to stay this litigation pending a final decision on the reexaminations of the '777 patent and/or the '706 patent.

Respectfully submitted,

Dated:  December 18, 2009            By: */s/Daniel K. Burke*
                                    Daniel K. Burke (24572 49)
                                    *dburke@hooverhull.com*
                                    **Hoover Hull LLP**
                                    111 Monument Circle, Suite 4400
                                    P.O. Box 44989
                                    Indianapolis, IN  46244-0989
                                    Telephone:  (317) 822-4400
                                    Facsimile:  (317) 822-0234

John B. Sganga, Jr. (admitted *pro hac vice*)
J. David Evered (admitted *pro hac vice*)
Joshua J. Stowell (admitted *pro hac vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorney for Defendant,
ENDOLOGIX, INC.

8250333
121109