# Faber on Mechanics of Patent Claim Drafting

SIXTH EDITION

PRACTISING LAW INSTITUTE

# PLI'S COMPLETE LIBRARY OF TREATISE TITLES

## ART LAW

All About Rights for Visual Artists
All About Tax Tips for Collectors
Art Law: The Guide for Collectors, Investors, Dealers & Artists

## BANKING & COMMERCIAL LAW

Asset-Based Lending: A Practical Guide to Secured Financing
Bankruptcy Deskbook
Documenting Secured Transactions: Effective Drafting and Litigation
Equipment Leasing–Leveraged Leasing
Hillman on Commercial Loan Documentation
Structured Finance: A Guide to the Principles of Asset Securitization

## BUSINESS, CORPORATE & SECURITIES LAW

Accountants' Liability
Advising High-Technology Companies
Broker-Dealer Regulation
Conducting Due Diligence in a Securities Offering
Consumer Product Safety Regulation: Impacts of the 2008 Amendments
Corporate Compliance Answer Book 2009
Corporate Legal Departments
Corporate Whistleblowing in the Sarbanes-Oxley Era
Credit Market and Subprime Distress: Responding to Legal Issues
Deskbook on Internal Investigations, Corporate Compliance and White Collar Issues
Directors' and Officers' Liability
Doing Business Under the Foreign Corrupt Practices Act
Exempt and Hybrid Securities Offerings
Financial Product Fundamentals: Law, Business, Compliance
Hedge Fund Regulation
Initial Public Offerings: A Practical Guide to Going Public
International Corporate Practice: A Practitioners Guide to Global Success
Investment Adviser Regulation: A Step-by-Step Guide to Compliance and the Law
Legal Opinions in Business Transactions
Mergers, Acquisitions and Tender Offers
Mutual Fund Regulation
Outsourcing: A Practical Guide to Law and Business
PLI's Guide to the SEC's Executive Compensation and Related Party Transaction Disclosure Rules
PLI's Guide to Securities Offering Reforms
PLI's Guide to the Sarbanes-Oxley Act for Business Professionals
Pocket MBA 1: Everything an Attorney Needs to Know About Finance
Pocket MBA 2: Everything an Attorney Needs to Know About Finance
Pocket MBA 3: Everything an Attorney Needs to Know About Finance
A Practical Guide to the Red Flag Rules: Identifying and Addressing Identity Theft Risks
Private Equity Funds: Formation and Operation
Proskauer on Privacy: A Guide to Privacy and Data Security Law in the Information Age
The Sarbanes-Oxley Deskbook

Securities Investigations: Internal, Civil and Criminal
The Securities Law of Public Finance
Securities Litigation: A Practitioner's Guide
Soderquist on Corporate Law and Practice
Soderquist on the Securities Laws
Variable Annuities and Variable Life Insurance Regulation

## COMMUNICATIONS LAW

Advertising and Commercial Speech: A First Amendment Guide
Sack on Defamation: Libel, Slander, and Related Problems

## EMPLOYMENT LAW

Disability Law Deskbook: The Americans with Disabilities Act in the Workplace
Employment Law Yearbook 2009

## ESTATE PLANNING AND ELDER LAW

Blattmachr on Income Taxation of Estates and Trusts
Estate Planning & Chapter 14: Understanding the Special Valuation Rules
International Tax and Estate Planning: A Practical Guide for Multinational Investors
Manning on Estate Planning
New York Elder Law
Stocker and Rikoon on Drawing Wills and Trusts
Tax and Estate Planning with Real Estate, Partnerships and LLCs

## IMMIGRATION LAW

Immigration Fundamentals: A Guide to Law and Practice

## INTELLECTUAL PROPERTY LAW

2009 Federal Circuit Yearbook: Patent Law Developments in the Federal Circuit
Copyright Law: A Practitioner's Guide
Faber on Mechanics of Patent Claim Drafting
How to Write a Patent Application
Kane on Trademark Law: A Practitioner's Guide
Likelihood of Confusion in Trademark Law
Patent Law: A Practitioner's Guide
Patent Licensing: Strategy, Negotiation, Forms
Patent Litigation
Pharmaceutical and Biotech Patent Law
A Practical Guide to Life Science Companies: Commercializing and Protecting Innovation
Substantial Similarity in Copyright Law
Trade Secrets: A Practitioner's Guide

## LITIGATION

American Arbitration: Principles and Practice
Electronic Discovery Deskbook
Evidence in Negligence Cases
Federal Bail and Detention Handbook
How to Handle an Appeal
Medical Malpractice: Discovery and Trial
Sinclair on Federal Civil Practice
Trial Handbook

## REAL ESTATE LAW

Commercial Ground Leases
Condominium and Co-Op Deskbook: A Practical Guide to Commercial and Residential Properties
Friedman on Contracts and Conveyances of Real Property
Friedman on Leases
Holtzschue on Real Estate Contracts and Closings: A Step-by-Step Guide to Buying and Selling Real Estate

## REINSURANCE LAW

Reinsurance Law

## TAX LAW

The Circular 230 Deskbook: Related Penalties, Reportable Transactions, Working Forms
Langer on Practical International Tax Planning
Internal Revenue Service Practice & Procedure Deskbook

## GENERAL PRACTICE PAPERBACKS

Drafting for Corporate Finance: What Law School Doesn't Teach You
Thinking Like a Writer: A Lawyer's Guide to Effective Writing & Editing
Working with Contracts: What Law School Doesn't Teach You

**Order now at www.pli.edu/pubs**
**Or call (800) 260-4754 Mon.–Fri., 9 a.m.–6 p.m.**

**Practising Law Institute**
**810 Seventh Avenue**
**New York, NY 10019**

When ordering, please use Priority Code NWS9-8TRWT.

# Faber on Mechanics of Patent Claim Drafting

SIXTH EDITION

ROBERT C. FABER

(Formerly *Landis on Mechanics of Patent Claim Drafting*, by Robert C. Faber)

Incorporating Release No. 1
July 2009
#20808

Practising Law Institute
New York City

**16966**

*This work is designed to provide practical and useful information on the subject matter covered. However, it is sold with the understanding that neither the publisher nor the author is engaged in rendering legal, accounting or other professional services. If legal advice or other expert assistance is required, the services of a competent professional should be sought.*

---

## QUESTIONS ABOUT THIS BOOK?

If you have questions about replacement pages, billing or shipments, or would like information on our other products, please contact our **customer service department** at (800) 260-4PLI.

For library-related queries, **law librarians** may email: libraryrelations@pli.edu.

For any other questions or suggestions about this book, contact PLI's **editorial department** at: editorial@pli.edu.

For general information about Practising Law Institute, please visit **www.pli.edu**.

---

Copyright © 1986, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009 by Practising Law Institute. All rights reserved. Printed in the United States of America. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Practising Law Institute.

Library of Congress Catalog Card Number: 2008937996
ISBN: 9781402411342

## § 3:3 Elements of Apparatus Claims

The "elements" of an apparatus claim are the main structural parts that together make up the combination claimed. As illustrated in Claim 1, the complete description of each element forms the subject matter of a separate clause, or subparagraph, of the claim.

A workpiece is a thing that the invention uses or operates upon and perhaps changes. The workpiece ("articles" in Claim 1) should be identified in the preamble of the claim, but not made an element of the claimed combination.[3] The workpiece appears in the body of the claim, as it interacts with a claim element.

One of the most important technical "rules" of form in drafting claims is that it is never proper to introduce a new element of the claim in the middle of the clause describing another element, or to describe an operation or action upon or by a new element without its having been introduced. This is sometimes called "inferential claiming."[4] Each new element in a product claim and each new step in a method claim should be first introduced either as (a) the subject of its own clause ("a container," "a base," etc., in Claim 1 above), or (b) a previously introduced and named item or a step comprises it, has it or includes it, that is, its presence is indicated by using a verb that describes the state of being (having, comprising, including, being), as in "a container [subject] having (comprising, including, being, etc.) [a word suggesting later element is a part of earlier one] a plurality of legs [subjects]" rather than an action verb or a verb indicating something is being done to or with the element, as "is connected" in Claim 1 above. Being the subject of its own clause means that it is either stated in the clause that such an element or step is present or the element or step is named at the beginning of the clause and thereafter that element or step, which has been named now for the first time, does something or has something done to it. It is important that a new item mentioned for the first time in the claim not be first mentioned as an element operated upon or cooperated with by a previous element described in the same clause. A clause can have more than one element as a subject, but only as limited above.

Every new element must be introduced by "a" or "an" (the part of speech called an indefinite article) or by no article at all, especially when the element is some means for performing a function (element (d) in Claim 1 above), or the element is stated in the plural (for example,

---

3. Even if it were proper to make the workpiece an element of the combination, one would rarely wish to do so, as it would unduly narrow the claim. A machine manufacturer would rarely sell the workpiece along with the machine. Thus he would not be a direct infringer [35 U.S.C. § 271(a)] of the claim.

4. M.P.E.P. § 706.03(d).

"containers" or "container means"). Every subsequent mention of the previously identified element must be preceded by the definite article "the" or by "said." To repeat the same element, preceded by the indefinite article "a" or "an," or preceded by no article at all for "means" or an element in the plural, implies that a new element is being introduced in the clause. This causes undesired and inaccurate double inclusion of one element.

Although it may be quite natural, and good practice in the descriptive portion of the specification, to state: "a container which is connected pivotally to a plurality of parallel legs," it is improper in the claim. The legs are separate elements of the combination, and thus should be positively set out and defined in the claim, as in Claim 1.

Another example:

**Wrong:** A lever having a forked end pivoted on a pin mounted between the furcations of the forked end.

Note, the pin is not part of the lever; it is a separate mechanical element.

**Better:**
(a) a lever having a forked end; and
(b) a pivot pin mounted between the furcations of the forked end

**Better Still:**
(a) a lever having a forked end,
(b) the forked end comprising spaced apart furcations; and
(c) a pivot pin mounted between furcations

The only exception to the inferential claiming prohibition is where the indefinite article "a" is used to introduce a workpiece. Because the workpiece is not an element of the claim, but rather it is only worked upon by one of the claim elements, it would not be introduced as the subject of its own clause.

A further example of improper inferential claiming is the clause "the motor being connected with *a* shaft which is connected with the gear for driving the gear." In that claim limitation, the shaft is inferentially claimed. It is not the subject of the clause. If there is a subject, it is the motor or the gear. Also, the shaft is not being described in a state of being with respect to the motor or the gear, but rather it is being described in a state of action. Proper wording might be "a shaft connected with the motor and with the gear for communicating driving motion from the motor to the gear." This says the same thing, but does not inferentially claim the shaft. (Implicit in this clause, of course, is that the motor and the gear were previously introduced in the claim, since each is preceded in the clause by the

definite article "the.") Referring to the other exception, if the clause reads "the motor including a shaft extending to the gear," that would not be inferential claiming. The shaft has been first introduced in the claim in a state of being with respect to the motor, so that for an inferential claiming analysis, the shaft is now properly in the claim. Thereafter, and even in the same shaft introducing clause, the shaft can be active, and it is described as cooperating with the gear. It is no longer inferential claiming once the element with the indefinite article "a" has been properly introduced.

Four essential elements (*italicized*) were selected for the combination of Claim 1 (section 3:1.1, above):

(a) the container,

(b) the base,

(c) the legs, and

(d) the oscillating means.

Note that all of these parts are essential, within the framework of the scope of claim desired, to accomplish the shaking of the articles, and that nothing more is needed. If a narrower claim were desired, the motor, cam, and cam follower linkage (together making up the oscillating means) could be made elements of the claim.

For the writing of broad claims, one concentrates on the minimum number of elements essential to the invention. As stated in M.P.E.P. section 706.03(f): "A claim can be rejected as incomplete if it omits essential elements, steps or necessary structural cooperative relationship of elements. . . ." It is also wise, at least in the broadest claims, to concentrate on what a potential infringer might sell, and leave out such conventional elements as power supplies, water supply hoses, compressed air sources, etc., which might not be sold as part of the combination.

There are usually four important things to tell about each element:

1. What is its name?

2. What are its constituent parts, if any, or distinctive features, that is, what features are necessary for the purposes of this claim to distinguish this element from any other element of the class?

3. How are it and its parts cooperatively associated with at least one other of the other elements or parts to accomplish the desired result? Or, what is the necessary connection and cooperation between the elements and parts?

4. Where pertinent, what does each element do and how does it do it?

5. Under (3) and (4), each element must be related structurally and/or in terms of functional cooperation or both with at least one other element.

One analogy is to think of the elements as islands, the parts of elements as peninsulas, and the statements of connection and cooperation as bridges. When the claim is done, all islands must be connected by bridges. Thus one composes a claim to a complete mechanical combination, or "machine."

**Summary**

*Find the main elements or parts of the machine to be claimed. Make each element the subject of one clause of the body of the claim. The claim must name the elements and tell how they are related to each other either physically and/or functionally and cooperatively to be the article or to do the job stated in the preamble. The following sections focus on how to do all this.*

## § 3:4 Workpiece or Environmental Element

Most claimed apparatus operate upon something or use something, or are operated upon and/or used by something else. Similarly, most methods act on something or involve something that is acted upon. That workpiece or environmental element should be recited for a claim to be complete and make sense. Yet, it should not be claimed in a manner suggesting that it is one of the elements of the invention claimed.

"Inclusion of material or article worked upon by a structure being claimed does not import patentability to the claims."[5]

An element of a claimed combination may have a characteristic or feature of the element defined in terms of some characteristic or feature of a workpiece with which the element cooperates, like size, color, brightness, shape, texture, etc. In *Ex parte Wolfskill*,[6] the former Board of Appeals held that defining the dimension of a part by positive reference to the dimension of a workpiece was not indefinite. The claim read: "Apparatus for lapping piezoelectric crystal blanks . . . said guide member having a thickness equal to several times the thickness of the crystal blank. . . ." In *Canon v. GCC International*,[7] the claim

5. M.P.E.P. § 2115; *In re* Young, 75 F.2d 996, 25 U.S.P.Q. (BNA) 69 (C.C.P.A. 1935); *In re* Otto, 312 F.2d 937, 136 U.S.P.Q. (BNA) 458 (C.C.P.A. 1963); *In re* Casey, 370 F.2d 576, 152 U.S.P.Q. (BNA) 235 (C.C.P.A. 1967).
6. *Ex parte* Wolfskill, 97 U.S.P.Q. (BNA) 176 (B.P.A.I. 1953).
7. Canon, Inc. v. GCC Int'l Ltd., 450 F. Supp. 2d 243, 81 U.S.P.Q.2d (BNA) 1642 (S.D.N.Y. 2006).