UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COOK INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ENDOLOGIX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | No. 1:09-cv-01248-TWP-DKL |
| _____ | ) | |
| | ) | |
| ENDOLOGIX, INC., | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK INCORPORATED, | ) | |
| | ) | |
| Counter Defendants. | ) | |

## ENTRY ON PARTIES' MOTIONS IN *LIMINE*

This matter is before the Court on the parties' motions in *limine*. Plaintiff Cook Incorporated ("Cook") has filed eight motions and Defendant Endologix, Inc. ("Endologix") has filed three motions. Cook brought this suit against Endologix for infringement of Cook's '706 and '777 patents. Trial is set in this case for October 29, 2012. The Court has previously issued several rulings including entries on motions to dismiss, claim construction, summary judgment, and evidentiary issues. Detailed facts and background information can be found in these rulings. In the current Entry, the Court will address each motion in *limine* in turn, beginning with Cook's motions, and will address the facts relevant to each motion as needed.

# I. <u>LEGAL STANDARD</u>

The court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose.  *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).  Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context.  *Id.* at 1400-01.  Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded.  *Id.* at 1401.  Rulings on motions in *limine* "are preliminary and may be revisited based on the court's exposure to the evidence at trial."  *Currie v. Cundiff*, No. 09-cv-866, 2012 WL 2254356, at *1 (S.D. Ill. June 15, 2012); *see Luce v. United States*, 469 U.S. 38, 41 (1984) ("[A] ruling [in *limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer.").

# II. <u>COOK'S MOTIONS IN *LIMINE*</u>

**A.      Motion in *Limine* No. 1 to Preclude Endologix from Treating the Non-Essential Preamble Term, "Body Passageway," as a Limitation of Claim 6 of the '706 Patent (Dkt. 252)**

In this motion, Cook argues Endologix should not be able to treat the phrase "body passageway," which is found in the Claim 6 preamble, as a claim limitation.  In *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002), the Federal Circuit explained that "[w]hether to treat a preamble as a limitation is a determination resolved only on review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."  (internal quotation marks omitted).  "In general, a preamble limits the invention if it recites essential structure or steps, or if it is

necessary to give life, meaning, and vitality to the claim." *Id.* (internal quotation marks omitted). But, where a patentee "defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention," a preamble is not limiting. *Id.* (internal quotation marks omitted).

The Claim 6 preamble reads:  "A method for combining a first and second self-expanding stent to form a stent assembly for insertion into a body passageway . . . ."  Dkt. 262-1 at 9 col. 7:13–15.  Cook argues the term "body passageway" is superfluous to the body of the claim and "merely describes an intended use . . . of the stent assembly that allegedly results from following the method claimed in the body of Claim 6."  Dkt. 252 at 2.  Endologix does not meaningfully contest this point.  Instead, Endologix's response focuses on collateral attacks to the motion.  First, Endologix argues Cook's expert Dr. McLean treated the term as a limitation of Claim 6; therefore, Cook has treated it as a limitation.  Second, it argues the term is not a proper subject for a motion in *limine* because "body passageway" is a limitation of asserted Claim 12.  Therefore, evidence about "body passageway" as a limitation is not inadmissible on any grounds.  Third, Endologix argues "Cook does not seek to exclude specific pieces of evidence, but instead seeks belated claim construction.

Addressing Endologix's arguments, first, Dr. McLean did discuss "body passageway" as understood by a person of ordinary skill in the art in Claim 6.  Second, it is true that evidence about "body passageway" will be used in addressing Claim 12.[1]  Third, determining whether a claim preamble is limiting is generally a matter of claim construction.  However, none of these three arguments persuade the Court on the legal question Cook has presented:  whether evidence

---

[1] In its reply, Cook states that it "strongly disagrees that 'body passageway' is a limitation of claim 12, although it recognizes that the Court's claim construction for the claim 12 phrase 'in which the straight sections press against the walls of the body passageway' treated 'body passageway' as a claim limitation."  Dkt. 303 at 3 n.2.  It goes on to reargue that the term describes the stent's capability, an argument the Court squarely rejected during claim construction.  Cook is reminded that it may not relitgate the meaning of claim terms to the jury.

of "body passageway" as a limitation of Claim 6 should be barred.  The fact that Dr. McLean gave opinions on this issue during his deposition does not preclude Cook from seeking to limit this testimony.  The Court finds, that while evidence of "body passageway" will be admissible in analyzing infringement under Claim 12, such evidence would be inadmissible for any purpose relating to "body passageway" being a limitation of Claim 6.  The Court disagrees with Endologix that the two cannot be separated.  Finally, several motions in *limine* currently before the Court rely on issues generally related to claim construction.  The Court finds this is not a bar to Cook's motion.

Because Endologix does not meaningfully contest the legal basis for Cook's motion, and the law supports Cook's position, the Court grants Cook's Motion in *Limine* No. 1.  Endologix may not present evidence that the preamble term "body passageway" is claim limitation of the '706 patent, Claim 6.

**B.    Motion in *Limine* No. 2 to Preclude Endologix from Arguing that It has Intervening Rights with Respect to Claim 23 of the '777 Patent (Dkt. 259)**

In this motion, Cook argues that Endologix should be precluded from alleging that intervening rights exist because the asserted reexamination Claim 23 of the '777 patent is without substantive change from the original Claim 11.  "Intervening rights do not accrue [ ] where the accused product or activity infringes a claim that existed in the original patent and remains 'without substantive change' after reissue."  *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012).  The first question when assessing intervening rights under 35 U.S.C. § 307(b), is "whether the asserted claim is 'amended or new;' if the answer is no, that ends the inquiry."  *Id.* at 1363.  The second question is "whether those literal amendments to the claim language had effected substantive changes in claim scope."  *Id.* Cook

does not dispute that the asserted claim is amended, but does contend the claim language as amended "merely makes express what was already implied in original Claim 11".

Specifically, Cook argues that the addition of the phrase "wherein said delivery system is characterized by the absence of a guiding catheter" did not substantively change the meaning of reexamination Claim 23.  For a brief background, the '777 patent entered reexamination on November 16, 2009.  The Patent Trademark Office ("PTO") rejected Claims 1 and 11 because U.S. Patent No. 4,665,918 ("the Garza patent" or "'918") taught every limitation of the claims. Eventually, the PTO accepted Cook's proffered amendments and issued a reexamination certificate including a new Claim 23, which included the limitations found in the original Claim 11 and the clarification statement "wherein said delivery system is characterized by the absence of a guiding catheter."

Endologix argues the addition of the statement quoted above narrowed Claim 11 in scope, and therefore, the two claims are not substantially identical.  *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (holding that a claim is identical to a claim in the original patent only if the scope of the two claims is identical).  In *Laitram*, the Federal Circuit held that when an amendment "resulted in the allowance of claims that had been rejected in the reexamination proceeding over prior art; this is a highly influential piece of prosecution history." *Id.* at 1348 (further stating that it is "difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment").  The Federal Circuit did not adopt a per se rule, and the Court must undertake an overall examination of the "written description, the prosecution history[,] and the language of the respective claims."  *Id.*

The Court agrees with Endologix that in this case, the reexamination history shows that Claim 23 is not substantially identical to the original claims. The PTO repeatedly rejected Cook's arguments that the original claims were distinguishable from the prior art, and Claim 23 was accepted only after it added an additional limitation that resolved the deficiency. Specifically, the PTO stated that the new Claim 23 "is patentable over the prior art of record because the closest prior art of record, Garza, fails to teach a delivery system that does not require a guiding catheter *as claimed*." Dkt. 244-9 at 6. The Court finds this a highly influential piece of patent prosecution history, and concludes that new Claim 23 was substantively changed by the amendment. Therefore, the Court denies Cook's Motion in *Limine* No. 2.

**C.     Motion in *Limine* No. 3 to Preclude Giberto Garza and Marek Kacki from Testifying about the Scope and Content of Their Patent and the Prior Art (Dkt. 253)**

As an initial matter, Endologix does not intend to call and does not contest this motion regarding Marek Kacki. Therefore, Cook's Motion in *Limine* No. 3 is granted as to this witness.

Cook argues Endologix should be precluded from calling Gilberto Garza ("Dr. Garza"), the inventor of prior art patent '918. Specifically, Cook argues Dr. Garza's testimony is cumulative of the actual patent, and to the extent he will testify about what he *meant* to say in the patent, such testimony is irrelevant. To support its position, Cook cites several cases that while at first glance appear to support its position, are actually distinguishable from this case.[2]

Endologix responds that courts routinely allow inventors to testify as to their personal knowledge of an invention or prior art, i.e., they may testify as lay witnesses. *See Gart v. Logitech, Inc.*, 254 F. Supp. 2d 1119, 1123 (C.D. Cal. 2003) (holding that witnesses were

---

[2] For example, in *Innogenetics, N.V. v. Abbott Laboratories, Inc.*, 512 F.3d 1363, 1375 (Fed. Cir. 2008), the Federal Circuit affirmed the district court's decision to limit an inventor's testimony on the grounds that "any information he might have to offer beyond the words of the [patent application] would be irrelevant to the issue before the jury." However, the Federal Circuit went on to say that "Dr. Cha could have added information that might not have been understood by a person of ordinary skill in the art just from reading the application," but because the defendant did not address the issue, the court affirmed the evidentiary ruling. Therefore, the issue was not squarely decided and Cook's citation is not persuasive.

permitted to testify about invention as lay witnesses based on their personal knowledge). Endologix cites *Knowles Electronics, LLC v. Microtronic U.S., Inc.*, No. 99 C 4681, 2000 WL 310305, at *2 (N.D. Ill. March 24, 2000), to support its position.  In *Knowles*, the plaintiff moved in *limine* to bar testimony of two inventors of several patents.  Specifically, the defendants sought to use these patents as prior art that invalidated the plaintiff's patent.  The district court stated that an "inventor's testimony concerning the design and mechanics of his particular contribution to the prior art may indeed aid the factfinder in determining the scope and meaning of the prior art." *Id.*  Because this was not expert testimony, the motion was denied.

Endologix further argues that Dr. Garza's testimony should be permitted as response to testimony by Mark Farber ("Dr. Farber").  During reexamination, Cook submitted a declaration by Dr. Farber and has designated portions of his deposition for use in this trial.  Specifically, Dr. Farber opined about the Garza patent, and Endologix argues Dr. Garza should be permitted to respond.  Cook points out, however, that it did not include Dr. Farber on its witness list.  Dr. Farber is only found on Endologix's witness list, and Cook then submitted deposition declaration in anticipation of Dr. Farber's testimony at trial.

The Court first notes that there is case law supporting Endologix's position that inventors may testify as lay witnesses as to their personal knowledge of their patents.  However, Endologix has not convinced the Court that Dr. Garza's testimony is *relevant* to the issues at this trial. Endologix has told the Court about Dr. Garza's possible testimony, but has not told the Court why such testimony is necessary.  Furthermore, Cook does not intend to call Dr. Farber as a witness.  Therefore, the Court reserves its ruling on Cook's Motion in *Limine* No. 3.  The parties should be prepared to discuss the relevance of Dr. Garza's testimony at the final pretrial conference.

**D.      Motion in *Limine* No. 4 to Preclude Endologix from Mentioning Its Patents to the Jury and from Arguing or Offering Evidence that it was Practicing Those Patents (Dkt. 254)**

Cook argues that evidence that an accused infringer has a patent on the accused device or method is irrelevant to infringement. *See Bio-Tech. Gen. Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) (quoting "The existence of one's own patent does not constitute a defense to infringement of someone else's patent."). Thus, Cook argues, "even if Endologix can practice those patents on stent graft or delivery system technology, this does not mean that Endologix can practice those patents if doing so would infringe Cook's earlier-issued patents." Dkt. 254 at 2. Furthermore, Cook argues that for an accused product's patent to be relevant to the doctrine of equivalents, the accused patent application must have listed or included the claimed patent as prior art. *See* Dkt. 306 at 3 (citing multiple cases). Finally, it argues that injecting Endologix's patents into the case would needlessly confuse the jury and be prejudicial to Cook.

Endologix responds that its patents are relevant to three issues: the doctrine of equivalents, willfulness, and laches. First, Endologix cites multiple Federal Circuit cases in which the court found that separate patentability was relevant as a consideration under the doctrine of equivalents. *See, e.g.*, *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1281 (Fed. Cir. 2011) (noting that separate patentability warrants no more than consideration together with all the facts weighing for and against equivalency). Second, Endologix argues that its patents are relevant to willfulness because Cook's claim of willfulness relies upon Endologix's statement that it became aware of the '706 patent when Endologix cited it as prior art in an August 2007 patent application. Endologix states that it needs to explain the circumstances of how it became aware of the '706 patent and to demonstrate why Cook's willfulness claims are baseless. Third, Endologix argues its patents are

relevant to show that Cook unreasonably delayed filing suit and that the delay prejudiced Endologix. Specifically, Endologix argues its patents are evidence of a monetary investment Endologix made in the accused period while "Cook laid in wait." Dkt. 281 at 7. Endologix further contends that a jury instruction that separate patentability does not "justify" infringement would adequately prevent jury confusion, and that it would face its own prejudice if prevented from providing the jury with its own development and patent history.

To begin, the Court disagrees that Endologix will be independently prejudiced if it is not allowed to present evidence of its patent history. Cook is asserting its patents, and the background of those patents is clearly relevant. While Endologix understandably wants to present evidence of its own development history of the accused products, evidence of its patents specifically is not necessary.

As for the doctrine of equivalents, the Court is bound to the Federal Circuit which has explicitly stated that evidence of separate patentability is a factor to be considered in a doctrine of equivalents analysis. Cook has not cited a Federal Circuit opinion that explicitly supports its position that the PTO must have considered the patent-in-suit as prior art before evidence of an accused device's patent can be considered. *See Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 WL 2022815, at *2 (E.D. Mich. July 7, 2009) (finding that evidence of the PTO considered patent-in-suit as prior art a prerequisite to evidence of separate patentability). Therefore, the Court finds that evidence of Endologix's patents is relevant under the doctrine of equivalents, as just one fact to be considered out of the whole. If Cook can present evidence that the PTO did not consider its own patent as prior art, the Court believes this goes to the weight of separate patentability, but not admissibility. The Court determines the same reasoning applies to the issue of willfulness. Moreover, if Cook alleges willfulness based on an Endologix patent application,

9

evidence of separate patentability is admissible.  Upon request, the Court will instruct the jury that evidence of Endologix's patents does not justify infringement.

Further, the Court finds evidence of Endologix's patents is irrelevant to the issue of laches.  In its trial brief, Endologix states that, "Cook knew of Endologix's Powerlink as early as 2004 and closely tracked the Powerlink's performance and sales thereafter."  Dkt. 237 at 31.  However, Endologix's patents were filed between 1998 and 2003.  Thus, any expense incurred by securing patents did not occur during the period of Cook's unreasonable delay.

Therefore, the Court denies in part and grants in part Cook's Motion in *Limine* No. 4.  Specifically, Endologix may not present general evidence about the history of its own patents and Endologix may not present evidence of its own patents for the issue of laches.  However, Endologix may present evidence of its own patents for the issues of infringement under the doctrine of equivalents and willful infringement.

**E.**  **Motion in *Limine* No. 5 to Preclude Endologix from Offering Argument or Evidence About the Competence of the Examination Process in the U.S. Patent and Trademark Office, or from otherwise Denigrating the Office, Its Examiners, or the Examination Process (Dkt. 255)**

Cook argues that Endologix should be precluded from presenting evidence suggesting that PTO examiners:  "(1) are ill-qualified; (2) have an inadequate amount of time to examine the applications properly; or (3) are inaccurate and fail to consider all relevant factors and evidence."  Dkt. 255 at 1.  Endologix agrees and states that it has "no intention of improperly denigrating the PTO or its examiners."  Dkt. 282 at 3.  However, Endologix contends it should be allowed to present evidence that the PTO mistakenly failed to consider invalidating evidence and thus mistakenly issued the patents-in-suit.  To support its position, Endologix points out the Federal Circuit Bar Association's Model Jury Instruction 1.1., which states:  "The fact that the PTO grants a patent does not necessarily mean that an invention claimed in the patent, in fact,

deserves the protection of a patent. . . .  For example, the PTO may not have had available to it all other prior art that will be presented to you."  From that instruction, Endologix contends it should be permitted to "introduce evidence that the patent office did not have all the relevant evidence when it issued the patents-in-suit *and* that it misread or misunderstood the Garza reference during the reexamination of the '777 patent."  Dkt. 282 at 2–3 (emphasis added).

The Court agrees with the first part of Endologix's contention.  It will be permitted to introduce evidence consistent with the model jury instruction cited.  This type of evidence is not denigrating.  However, evidence that the PTO made a mistake and further explanation of those mistakes to the jury goes beyond that which is allowed.  Therefore, the Court grants Cook's Motion in *Limine* No. 5, with the exception that evidence that the PTO did not have all the relevant evidence when it issued the patents-in-suit is permitted.

**F.     Motion in *Limine* No. 6 to Preclude Endologix from Offering New Expert Testimony from Daniel McGavock on Any Lost Profits Analysis or Calculation Not Already Disclosed in His Damages Report (Dkt. 256)**

Cook argues that Endologix's damages expert Daniel McGavock should not be allowed to testify beyond that found in his expert report.  Endologix agrees, but notes that while Mr. McGavock did not put forth his own lost profits analysis or calculation, Mr. McGavock did specifically rebut Cook's damages expert in his report and at his deposition.

The law is settled that an expert may not testify beyond the scope of his or her expert report.  Both parties are held to this rule.  If Dr. McGavock expresses an intent to go outside the scope of his report, or if questions are posed that would elicit such an opinion, Cook can object at that time.  Therefore, Cook's Motion in *Limine* No. 6 is granted.

**G.**   **Motion in *Limine* No. 7 to Preclude Endologix from Providing Expert Testimony Concerning Opinions Not Disclosed in Its Expert Reports (Dkt. 257)**

Similar to Motion in *Limine* No. 7, Cook seeks to limit Endologix's experts to the scope of the expert reports.  Endologix agrees.  The Court will not address Cook's specific objections at this time, as the specific testimony of the experts will be unknown until trial.  The rule governing expert testimony governs both parties.  If any expert expresses an intent to go outside the scope of their report, or if questions are posed that would elicit such an opinion, the parties can object at that time.  Therefore, Cook's Motion in *Limine* No. 7 is granted.

**H.**   **Motion in *Limine* No. 8 to Preclude Endologix from Arguing that Cook's Infringement Claims are Barred by Estoppel (Dkt. 258)**

Pursuant to the Court's Entry denying Endologix's Motion for Leave to File Motion for Summary Judgment of No Contractual Estoppel and No Willful Infringement (Dkt. 299), this motion is granted.  Neither party may present evidence of contractual estoppel at trial.

**I.**   **Summary of Cook's Rulings**

The Court grants the following of Cook's Motions in *Limine*: 1, 5, 6, 7, and 8.  Endologix may not present evidence that "body passageway" is a limitation of Claim 6, about the competency of the PTO office or staff, or any expert testimony beyond the scope of the expert reports.  The Court denies Cook's Motion in *Limine* No. 2.  Endologix may present evidence about its intervening rights prior to the '777 patent reexamination certificate.  The Court grants in part and denies in part Cook's Motion in *Limine* No. 4.  Endologix may not present the evidence of the history of its patents or how its patents relate to laches.  Endologix may present evidence for the issues of infringement under the doctrine of equivalents and willful infringement.  The Court grants in part and reserves ruling in part on Cook's Motion in *Limine* No. 3.  The parties

should be prepared to discuss the relevance of Dr. Garza's testimony at the final pretrial conference.

### III.  ENDOLOGIX'S MOTIONS IN *LIMINE*

**A.     Motion in *Limine* No. 1 to Preclude Shawn Lawson and Michael Terrell from Testifying at Trial (Dkt. 238)**

Endologix argues that Cook failed to identify witnesses Shawn Lawson ("Mr. Lawson") and Michael Terrell ("Mr. Terrell") in its initial disclosures or at any time during discovery. Therefore, it seeks to exclude their testimony at trial.  Endologix specifically argues that there is no justification for Cook's failure to identify either witness, and Endologix has had no opportunity to depose either witness.  Cook responds, first, that Mr. Lawson was identified in fact discovery in his role of overseeing production for the Cook Zenith AAA devices.  Moreover, Mr. Lawson was identified in Cook's damages expert report and at the expert's deposition. Second, Cook responds that Mr. Terrell has been well known to Endologix as the attorney in the 2008 lawsuit between the parties.  Moreover, it argues Mr. Terrell was identified in numerous documents produced during fact discovery.  Furthermore, Cook argues any delay was justified or harmless and relies upon Endologix's failure to present prejudice and that any prejudice can be cured by conducting pretrial depositions.

As to Mr. Lawson, the Court agrees with Endologix that a reference to Mr. Lawson amidst the hundreds of thousands of discovery pages does not constitute adequate identification of a witness.  However, Mr. Lawson was used by Cook's damages expert as a main source of information.  Moreover, Endologix has not put forth convincing evidence of prejudice resulting from Cook's delayed disclosure.  And any resulting prejudice may be cured by conducting a pretrial deposition.  Therefore, the Court denies Endologix's Motion in *Limine* No. 1 as it pertains to Mr. Lawson.  Because the Court does believe Cook delayed in disclosing Mr.

13

Lawson, the Court would entertain a motion from Endologix to recover fees and deposition costs from Cook.

As to Mr. Terrell, this motion is necessarily granted pursuant to the Court's ruling on Endologix's Motion in *Limine* No. 2, which is discussed immediately below.

**B.    Motion in *Limine* No. 2 to Exclude Reference at Trial to the 2008 Lawsuit between the Parties (Dkt. 240)**

The 2008 lawsuit between the parties has been a frequent subject in this case.  In this motion, Endologix argues for exclusion of any evidence or reference to the 2008 lawsuit under Federal Rules of Evidence 402 and 403.  Cook responds that evidence of the 2008 lawsuit is "highly relevant" as to Endologix's disregard of Cook's property rights and willful infringement, competition between the products at issue, and the implausibility of Endologix's niche market theory.

In the Court's Entry on Summary Judgment of No Contractual Estoppel (Dkt. 225) the Court found that "the present patent infringement lawsuit is not in any way related to the 2008 Lawsuit; nor does it arise out of that lawsuit."  Dkt. 225 at 8.  The Court described the 2008 lawsuit as follows:

> At its core, the 2008 lawsuit focused on a group of former Cook employees gone rogue, leveraging their institutional knowledge, deep familiarity with products, and tight-knit relationships to work for a competitor in the marketplace for AAA products. The key evidence related to the behavior of these employees, the behavior of Endologix, and the obligations imposed by the non-compete agreement. The fact that AAA products were involved was, at the absolute most, incidental and ancillary to the important issues at play. The present lawsuit, by contrast, is single-mindedly focused on a nuts-and-bolts review of the structure, operation, and features of the accused products.

Dkt. 225 at 8.  The Court reasoned that the fundamental difference between the cases, people versus products, foreclosed contractual estoppel.  Likewise, the Court finds because of the fundamental difference between the cases, any relevance the 2008 lawsuit may have in the

present case is minimal.  Given the minimal relevance, the Court further finds that evidence of the 2008 lawsuit is barred by Federal Rule of Evidence 403.  The minimal probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, and wasting time.  Therefore, the Court grants Endologix's Motion in *Limine* No. 2.  The parties may not present any evidence, including testimony by Mr. Terrell, about the 2008 lawsuit.

**C.      Motion in *Limine* No. 3 to Preclude Cook from Introducing Evidence of Damages for Infringement of the '777 Patent Before the Date of the Reexamination Certificate (Dkt. 242)**

Endologix argues that evidence of damages for infringement of the '777 patent before the reexamination certificate issued on July 20, 2010 would be irrelevant and inadmissible under Federal Rules of Evidence 402 and 403.  In its ruling on Cook's Motion in *Limine* No. 2, the Court found that Cook's addition of the phrase "wherein said delivery system is characterized by the absence of a guiding catheter" substantively changed the meaning of reexamination Claim 23.  When a patentee "made substantive changes to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate." *Yoon Ja Kim v Earthgrains Co*., 451 Fed. Appx. 922, 925 (Fed. Cir. 2011).  The Court finds that Endologix is entitled to intervening rights of the '777 patent, prior to the date the PTO issued the reexamination certificate.  Therefore, Cook may not pursue or present evidence of damages prior to the date July 20, 2010 and the Court grants Endologix's Motion in *Limine* No. 3.

**D.      Summary of Endologix's Rulings**

The Court grants Endologix's Motions in *Limine* Nos. 2 and 3.  Cook is precluded from presenting evidence about the 2008 lawsuit and damages predating the '777 patent reexamination certificate.  The Court grants in part and denies in part Endologix's Motion in *Limine* No. 1.

Cook may present the testimony of Mr. Lawson.  Cook may not present the testimony of Mr. Terrell.

### IV.  CONCLUSION

The Court **GRANTS** the following motions:  Cook's Motions in *Limine* Nos. 1, 5, 6, 7, and 8 (Dkts. 252, 255, 256, 257, 258); Endologix's Motions in *Limine* Nos. 2 and 3 (Dkts. 240, 242).  The Court **DENIES** Cook's Motion in *Limine* No. 2 (Dkt. 259).  The Court **GRANTS in part** and **DENIES in part** the following motions:  Cook's Motion in *Limine* No. 4 (Dkt. 254); Endologix's Motion in *Limine* No. 1 (Dkt. 238).  The Court **GRANTS in part** and **reserves ruling in part** on Cook's Motion in *Limine* No. 3 (Dkt. 253).  If the parties wish to renew any arguments as the trial unfolds, they are free to approach the bench and do so.  *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in *limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").

SO ORDERED.    10/01/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

16

DISTRIBUTION:

Bradley G. Lane
BRINKS HOFER GILSON & LIONE
blane@brinkshofer.com

Bryan John Leitenberger
BRINKS HOFER GILSON & LIONE
bleitenberger@brinkshofer.com

Danielle Anne Phillip
BRINKS HOFER GILSON & LIONE
dphillip@brinkshofer.com

Jason W. Schigelone
BRINKS HOFER GILSON & LIONE
jschigelone@brinkshofer.com

Kelly J. Eberspecher
BRINKS HOFER GILSON & LIONE
keberspecher@brinkshofer.com

Ralph J. Gabric
BRINKS HOFER GILSON & LIONE
rgabric@brinkshofer.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Daniel K. Burke
HOOVER HULL LLP
dburke@hooverhull.com

Emily K. Sauter
KNOBBE MARTENS OLSON & BEAR,
LLP
emily.sauter@knobbe.com

Joseph S. Cianfrani
KNOBBE MARTENS OLSON & BEAR,
LLP
joseph.cianfrani@kmob.com

John David Evered
KNOBBE MARTENS OLSON & BEAR,
LLP.
2jde@kmob.com

Joshua J. Stowell
KNOBBE MARTENS OLSON & BEAR,
LLP.
2jys@kmob.com

John B. Sganga, Jr.
KNOBBE MARTENS OLSON & BEAR,
LLP.
2jbs@kmob.com